PEOPLE v WOOLFOLK

Docket No. 312056. Submitted December 11, 2013, at Detroit. Decided
    February 27, 2014, at 9:00 a.m. Leave to appeal sought.

Deandre M. Woolfolk was convicted following a jury trial in the
    Wayne Circuit Court, Vera Massey Jones, J., of first-degree murder
    and possession of a firearm during the commission of a felony. He
    was sentenced to life in prison without the possibility of parole for
    the murder conviction and a consecutive two-year term for the
    felony-firearm conviction. Defendant appealed, alleging, in part,
    that the court erred by sentencing him to life in prison without the
    possibility of parole for a murder that took place on the evening
    before the day of defendant's 18th birthday.

The Court of Appeals *held*:

1. Defendant failed to show actual and substantial prejudice
resulting from the nearly five-year delay in arresting him for the
murder. The delay that occurred was reasonable and justified
under the circumstances. In the absence of a demonstration of
specific prejudice to defendant's defense, or evidence that the
delay was caused by deliberate misconduct on the part of the police
or the prosecution, the Court of Appeals declined to reverse the
convictions on the ground that the three-month delay between the
issuance of the felony complaint and defendant's arraignment was
a denial of due process. Defendant failed to demonstrate plain
error affecting his substantial rights. Defendant's trial counsel
was not ineffective for failing to object to the delay.

2. Under the circumstances, the use of a single photograph by
the police to help confirm the identity of the person (defendant) a
witness had already identified as the shooter did not create a
substantial likelihood of misidentification or violate defendant's
right to due process. The prior relationship between the witness
and defendant established an untainted, independent basis for the
in-court identification of defendant by the witness.

3. The "birthday rule" of age calculation applies in Michigan.
Under the rule, a person attains a given age on the anniversary
date of his or her birth. The common-law rule, that one becomes of
full age the first moment of the day before the anniversary of his
or her birth, does not apply in Michigan. The common-law rule, to

the extent that it was ever applicable in Michigan, was long ago abrogated by decisions of the Michigan Supreme Court. The Legislature's subsequent statutory enactments must be interpreted with that judicial abrogation in mind.

4. Defendant's convictions are affirmed, however, resentencing with regard to the sentence for the murder conviction is required. Under the birthday rule, defendant was not yet 18 when the murder occurred. The United States Supreme Court provided in *Miller v Alabama*, 567 US ___; 132 S Ct 2455; 183 L Ed 2d 407 (2012), that violation of the prohibition against cruel and unusual punishment occurs when individuals under the age of 18 at the time of their crimes are sentenced to mandatory life without the possibility of parole. Defendant was under the age of 18 at the time he killed the victim. The case must be remanded for resentencing in accordance with *Miller*.

Convictions affirmed, remanded for resentencing for the first-degree murder conviction.

CRIMINAL LAW — SENTENCES — MINORS — CALCULATING AGE — BIRTHDAY RULE.

The "birthday rule" of age calculation applies in Michigan; under the birthday rule, a person attains a given age on the anniversary date of his or her birth; the common-law rule of age calculation, under which one becomes of full age the first moment of the day before the anniversary of his or her birth, to the extent that it was ever applicable in Michigan, has been abrogated by decisions of the Michigan Supreme Court.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Kym Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Daniel E. Hebel*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Jessica L. Zimbelman* and *Valerie R. Newman*) for defendant.

Before: BOONSTRA, P.J., and DONOFRIO and BECKERING, JJ.

BOONSTRA, P.J. Defendant appeals by right his jury trial convictions of first-degree murder, MCL 750.316,

and possession of a firearm during the commission of a felony (felony firearm), MCL 750.227b. He was sentenced to life in prison without the possibility of parole for the murder conviction, consecutive to two years in prison for the felony-firearm conviction. We affirm defendant's convictions and remand for resentencing in light of *Miller v Alabama*, 567 US ___; 132 S Ct 2455; 183 L Ed 2d 407 (2012).

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of a shooting in Detroit on January 28, 2007. Witnesses saw a black car drive past a house. Shortly after, three men approached the house and someone shot a gun at the people inside. The victim, Mone Little, was shot and killed. Defendant was eventually identified by a witness, Michael Watson, as the person who fired a gun at the house. Watson had grown up with defendant and knew him by his street name.

Watson gave a statement to the police the day after the shooting. Watson did not implicate defendant at that time and told the police that he did not know who did the shooting. Sometime after the shooting, Watson was arrested in connection with the 2006 shooting of Robert Sawyer, who was related to one of the two men who accompanied defendant the night Little was shot. After Watson was released from custody in 2007 when a key witness against him died, he moved to St. Louis, Missouri, and lived there under an assumed name. Watson was arrested in Missouri in 2009 for unrelated first-degree murder and kidnapping charges. In November 2009, after receiving an anonymous tip that Watson was incarcerated in Missouri, Sergeant Barbara Kozloff (the police officer in charge of the Little case) went to Missouri to speak to Watson. Watson testified that he

told Kozloff what happened the night of the Little shooting, identified the shooter by referring to defendant's nickname, and then identified a photograph Kozloff showed him as being a photograph of defendant. Watson pleaded guilty to a charge of second-degree murder in Missouri in 2011. After Watson was sentenced, Kozloff again contacted him, and Watson stated that he was willing to testify in the Little case. Watson was granted use immunity, so that any information derived directly or indirectly from his testimony or the information he provided could not be used against him in a criminal case, except for impeachment purposes or in a perjury prosecution, and he testified at defendant's trial pursuant to that grant of use immunity.

The jury found defendant guilty of first-degree murder and felony firearm. Defendant was given a mandatory sentence of life in prison for the first-degree murder conviction and sentenced to two years' imprisonment for the felony-firearm conviction. Defendant's official date of birth is January 29, 1989. The offense therefore occurred on the evening before defendant's 18th birthday. Defendant appeals his convictions and his mandatory life sentence.

## II. DELAY IN ARREST

Defendant argues that the delay of nearly five years in arresting him for the murder of Little violated his due process rights, or, alternatively, that he was denied the effective assistance of trial counsel because his counsel did not object to the prearrest delay. We disagree. This Court denied defendant's motion to remand for an evidentiary hearing.[1] Review of defendant's claim

---

[1] *People v Woolfolk*, unpublished order of the Court of Appeals, entered August 21, 2013 (Docket No. 312056).

of ineffective assistance of counsel is therefore limited to any mistakes apparent on the record. See *People v Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002). Defendant did not raise the issue of prearrest delay in the trial court. Therefore, this Court reviews this issue for plain error affecting defendant's substantial rights. See *People v Carines*, 460 Mich 750, 761; 597 NW2d 130 (1999).

A prearrest delay that causes substantial prejudice to a defendant's right to a fair trial and that was used to gain tactical advantage violates the constitutional right to due process. *United States v Marion*, 404 US 307, 324; 92 S Ct 455; 30 L Ed 2d 468 (1971); *People v Patton*, 285 Mich App 229, 237; 775 NW2d 610 (2009); *People v White*, 208 Mich App 126, 134; 527 NW2d 34 (1994). Defendant must present evidence of actual and substantial prejudice, not mere speculation. *Patton*, 285 Mich App at 237; *People v Adams*, 232 Mich App 128, 134-135; 591 NW2d 44 (1998). A defendant cannot merely speculate generally that any delay resulted in lost memories, witnesses, and evidence, *Marion*, 404 US at 325-326, even if the delay was an especially long one, *Adams*, 232 Mich App at 134-135.

Here, defendant has not demonstrated actual and substantial prejudice. Defendant has offered on appeal an affidavit asserting that he was at a party at his father's residence "the entire night" in question, that he was not driving and did not have access to a black car that evening, and that no one could testify with certainty regarding either of those circumstances because of the long delay. This affidavit was not introduced in the trial court and is not part of the lower court record. This Court's review is limited to the lower court record. *Kent Co Aeronautics Bd v Dep't of State Police*, 239 Mich App 563, 580; 609 NW2d 593 (2000), aff'd sub nom

*Byrne v Michigan*, 463 Mich 652 (2001). Even if we were to consider defendant's affidavit, however, it does not purport to identify any witnesses who would have testified on his behalf but for the delay. Defendant also does not allege that he asked his trial counsel to contact any specific person in an attempt to obtain alibi testimony. We conclude that defendant has not established actual and substantial prejudice. See *Patton*, 285 Mich App at 237; *People v Crear*, 242 Mich App 158, 166; 618 NW2d 91 (2000); *Adams*, 232 Mich App at 134.

We further conclude that the delay was reasonable and justified under the circumstances. Defendant argues that the delay had four components: (a) the period between the 2007 incident resulting in Little's death and the anonymous tip in early 2009 regarding Watson's location, (b) the several months between the tip and the police sergeant's first visit to Missouri, (c) the period between the first and second visit to Missouri, and (d) the four months between the issuance of the felony complaint and defendant's arraignment.[2] Defendant suggests that Kozloff should have spoken to Watson while Watson was incarcerated and charged with Sawyer's murder in the spring of 2007, before Watson went to Missouri and began living under a different name. Kozloff testified, however, that she interviewed Watson the day after the shooting and that Watson denied knowing the perpetrators' identities. Watson

---

[2] Defendant alleges that a delay of four months occurred between the issuance of the complaint and warrant for his arrest and his arraignment. However, the record indicates that defendant was arraigned in the district court on February 23, 2012, that a preliminary examination was held on March 9, 2012, after a continuance was granted to the defense, and that defendant was arraigned in the circuit court on March 20, 2012. Thus, the delay between the issuance of the complaint on November 14, 2011, and defendant's first arraignment is approximately three months and nine days, not four months.

later explained that he did so because someone had threatened him and his family. But while there is no indication in the lower court record that Kozloff interviewed Watson again while he was in custody, there is also no indication that she had any reason to believe that he was not being truthful. During that time, Kozloff was also tracking down another suspect and was not aware that Watson was about to disappear. We hold that this delay was justified under the circumstances. It is appropriate for a prosecuting attorney to wait for the collection of sufficient evidence before charging a suspect, even when that wait is extended by the disappearance of a key witness. See *People v Herndon*, 246 Mich. App 371, 390-391; 633 NW2d 376 (2001); *People v Cain*, 238 Mich App 95, 110-111; 605 NW2d 28 (1999). With regard to the other precomplaint claimed periods of delay, we similarly conclude that they were reasonable and justified under the circumstances. Kozloff indicated that she did not wish to interfere with the proceedings in Missouri. Moreover, the prosecution lacked access to and jurisdiction over Watson, its principal witness, during this time.

Finally, with regard to the delay between the issuance of a felony complaint and warrant on November 14, 2011, and defendant's arraignment on February 23, 2012, defendant has not provided this Court with any authority to support the notion that a three-month delay between the issuance of a complaint and an arraignment is unreasonable, especially when for the majority of that time the defendant was incarcerated on other charges. However, no reason for the delay appears in the record. Generally, mere delay between the issuance of a complaint and an arrest and arraignment, absent actual and substantial prejudice, is not a denial of due process. See *Patton*, 285 Mich App at 237. In the absence of a demonstration of specific prejudice to

defendant's defense, or evidence that the delay was caused by deliberate misconduct on the part of the police or the prosecution, we decline to reverse defendant's convictions on the ground that he was prejudiced by this relatively minimal delay. *Id*. Defendant has not demonstrated plain error affecting his substantial rights. *Carines*, 460 Mich at 761.

Because we conclude not only that defendant has not established actual and substantial prejudice, but that the delay was not unreasonable, we do not find defendant's trial counsel ineffective for failing to object to it. An attorney does not have a duty to make a meritless argument. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

### III. IDENTIFICATION

Defendant also argues that his trial counsel was ineffective for failing to object to the use of a single photograph in an interview with the only witness (Watson) who thereafter identified defendant in court. A photographic identification procedure violates a defendant's right to due process when it is so impermissibly suggestive that it creates a substantial likelihood of misidentification. *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998); *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993) (opinion by GRIFFIN, J.). Showing a witness a single photograph is considered to be one of the most suggestive photographic identification procedures. See *Gray*, 457 Mich at 111. However, whether it violates due process depends on the totality of the circumstances. *Stovall v Denno*, 388 US 293, 302; 87 S Ct 1967; 18 L Ed 2d 1199 (1967); *Kurylczyk*, 443 Mich at 306 (opinion by GRIFFIN, J.).

In this case, the photograph was used only to help confirm the identity of the person the witness had

already identified—using a nickname—as the shooter. The witness testified that he knew, and grew up with, the shooter. Under these circumstances, the use of a single photograph did not create a substantial likelihood of misidentification and, therefore, did not violate defendant's right to due process. See *Gray*, 457 Mich at 111; *Kurylczyk*, 443 Mich at 302 (opinion by GRIFFIN, J.). Further, the prior relationship and the witness's identification of the shooter by name before seeing the photograph established an untainted, independent basis for the in-court identification. See *Gray*, 457 Mich at 114-115; *Kurylczyk*, 443 Mich at 303 (opinion by GRIFFIN, J.). Any objection by trial counsel would have been meritless. *Snider*, 239 Mich App at 425.

### IV. SENTENCING

Defendant argues that his sentence of mandatory life imprisonment without the possibility of parole is cruel and unusual punishment under the United States and Michigan Constitutions. US Const, Am VIII; Const 1963, art 1, § 16. In light of *Miller*, we agree.[3] At first glance, that result would appear obvious, because the murder of Little occurred on the evening *before* defendant's 18th birthday, and *Miller* and its progeny would therefore seem to mandate that defendant be resentenced in accordance with the requirements of the caselaw. However, the issue is more complicated than it first appears, inasmuch as the common-law rule of age

---

[3] Given that we find *Miller* to be controlling, and that it requires resentencing here, we need not separately address whether defendant's sentence violates Michigan's constitutional proscription of "cruel or unusual punishment." Const 1963, art 1, § 16; see *People v Bullock*, 440 Mich 15, 30; 485 NW2d 866 (1992) (interpreting the Michigan Constitution's protection against "cruel or unusual punishment" as offering broader protection than the United States Constitution's protection against "cruel and unusual punishments").

calculation, if applicable here, would deem defendant to have reached the age of 18 *before* shooting Little, in which event *Miller* would not apply and resentencing would not be required. We therefore must decide whether the common-law rule of age calculation applies.

A. *MILLER* v *ALABAMA* AND ITS PROGENY

In *Miller*, 567 US at ___, ___; 132 S Ct at 2460, 2469; 183 L Ed 2d at 414-415, 424, the United States Supreme Court held that the Eighth Amendment's protection against cruel and unusual punishment prohibits sentencing schemes that mandate life in prison without the possibility of parole for those "under the age of 18 at the time of their crimes." The Court held that the sentencing court must take into account the differences among juveniles and their crimes when determining whether life imprisonment without the possibility of parole is the appropriate punishment. *Id.* 567 US at ___ n 8, ___; 132 S Ct at 2469 n 8, 2475; 183 L Ed 2d at 424 n 8, 430.

In *People v Carp*, 298 Mich App 472, 531; 828 NW2d 685 (2012), lv gtd 495 Mich 890 (2013), this Court found, under *Miller*, that MCL 791.234(6)(a), which mandates a sentence of imprisonment for life, without eligibility for parole, for first-degree murder, was unconstitutional as applied to juveniles. This Court held that *Miller* applied to all cases still pending on direct review, although it did not apply to cases on collateral review. *Carp*, 298 Mich App at 511, 522. This Court also noted that, under *Miller*, a "juvenile" must be defined to include not only those individuals who are " 'less than 17 years of age,' " as the term is defined in this state's Code of Criminal Procedure and the Revised

Judicature Act, MCL 764.27; MCL 600.606(1),[4] but additionally must include those individuals "between 17 and 18 years of age." *Carp*, 298 Mich App at 536-537. This Court also held that a sentencing court must evaluate and review the characteristics of youth and the circumstances of the offense delineated in *Miller* and *Carp* in determining whether, following the imposition of a life sentence, a juvenile is to be deemed eligible or not eligible for parole, and that the parole board must respect the sentencing court's decision by providing a meaningful determination and review when parole eligibility arises. *Id.* at 538.

Neither *Miller* nor *Carp*, nor any applicable statute, provides a means for calculating *when* a defendant reaches the age of 18. Resolution of this question requires this Court to decide, as an issue of first impression, whether the common-law rule of age calculation or, alternatively, the so-called "birthday rule," governs age calculation under Michigan law.

### B. THE COMMON-LAW RULE OF AGE CALCULATION

Contrary to common assumption or understanding, the common law has long held that an individual's age is computed differently than time is computed under general computation principles. The common-law rule has been stated thusly:

> Where the common law prevails, the general rule for the computation of time is to exclude the first and include the last day. For over 200 years, the common law has, however, recognized a remarkable exception to the foregoing rule, to the effect that in computing a person's age the day upon which that person was born, even though he was born on

---

[4] Although not referred to in *Carp*, we note that the Michigan Probate Code similarly defines "juvenile" as a person who is "less than 17 years of age." MCL 712A.1(1)(h).

the last moment thereof, is included, and he therefore reaches his next year in age at the first moment of the day prior to the anniversary date of his birth. [*Nelson v Sandkamp*, 227 Minn 177, 179; 34 NW2d 640 (1948) (citations omitted).]

Stated another way, under the common law, "[t]he law ordinarily taking no cognizance of fractions of days, one becomes of full age the first moment of the day before" the anniversary of his or her birth. *United States v Wright*, 197 F 297, 298 (CA 8, 1912).[5] See also Anno: *Inclusion or Exclusion of the Day of Birth in Computing One's Age*, 5 ALR2d 1143, § 1 (1949) ("This rule constitutes a thoroughly entrenched exception to the general method of measuring time by excluding one terminal day.") (collecting cases).[6]

Courts of numerous other state jurisdictions also have followed the common-law rule, in various contexts. See, e.g., *In re APS*, 304 Ga App 513, 516; 696 SE2d 483 (2010) ("The application of the common law

---

[5] The United States Court of Appeals for the Eighth Circuit in *Wright* did not indicate whether it was applying the common law of a particular state or federal common law; it cited only cases from the state courts in Delaware, Indiana, and Kentucky. The issue presented in *Wright* concerned the right of the federal government to set aside a lease of real property located in the Quapaw reservation that had been entered into by a member of the Quapaw Tribe who was a minor at the time of entering into the lease. While it has long been held that "[t]here is no federal general common law," *Erie R Co v Tompkins*, 304 US 64, 78; 58 S Ct 817; 82 L Ed 1188 (1938), specialized areas of post-*Erie* federal common law have developed. See Wright, Miller & Cooper, 19 Fed Prac & Proc, Jurisdiction (2d ed), § 4514.

[6] Our citation of cases following the common-law rule, or alternatively the birthday rule, is intended to be exemplary, not exhaustive. See also Turner, *The Maryland Survey: 2002-2003: Recent Decision: The Court of Appeals of Maryland*, 63 Md L Rev 992 (2004); 5 ALR2d 1143, § 3, p 1147; 42 Am Jur 2d, Infants, § 10; 45 Am Jur Proof of Facts, 2d, 631, Age of Person, § 2; Williston, Contracts (4th ed), 9.3; 43 CJS, Infants, § 2; 86 CJS, Time, § 4.

rule in this State occurred at least as early as 1930, it was applied to juvenile court jurisdiction in 1980, and it has remained unchanged by the legislature. . . . [W]e therefore affirm."); *Mason v Baltimore Co Bd of Ed*, 143 Md App 507, 515; 795 A2d 211 (2002) ("In the absence of Maryland authority to the contrary, we shall follow the common law rule and hold that appellant attained age eighteen, thereby removing the disability of infancy, on April 3, 1997."); *Velazquez v State*, 648 So 2d 302, 304 (Fla Dist Ct App, 1995) ("[T]he common-law rule for determining a person's age is that a person reaches a given age at the earliest moment of the day before the anniversary of his birth. . . . While we conclude that . . . the common law controls in this case, we note that the modern trend is to adopt what has been described as the more commonsense rule that a person attains a certain age on that person's corresponding birthday."); *State of New Jersey in the Interest of FW*, 130 NJ Super 513; 327 A2d 697 (Juvenile and Domestic Relations Ct, 1974) (applying the common-law rule in finding that the juvenile court lacked jurisdiction where the offense was committed at 5:03 a.m. on the day before the defendant's 18th birthday); *State v Brown*, 443 SW2d 805, 807 (Mo, 1969) ("[A] person reaches his next year in age at the first moment of the day prior to the anniversary of his birth. . . . This exception has been followed for such a long period of time that it has achieved a status of its own and should be followed in the absence of a statutory enactment to the contrary."); *Fox v Manchester*, 88 NH 355, 361-362; 189 A 868 (1937), quoting *Wright*, 197 F at 298 (" 'The law ordinarily' takes 'no cognizance of fractions of days, one becomes of full age the first moment of the day before his twenty-first anniversary.' "); *Inhabitants of Town of Gouldsboro v Inhabitants of Town of Sullivan,*

132 Me 342, 343; 170 A 900 (1934) (an individual "attained full age July 18, 1922, the day preceding the twenty-first anniversary of his birth"); *Thomas v Couch*, 171 Ga 602, 606; 156 SE 206 (1930) ("One becomes of full age on the day preceding the twenty-first anniversary of his birth, on the first moment of that day."); *Frost v State*, 153 Ala 654, 664; 45 So 203 (1907), overruled on other grounds by *Graves v Eubank*, 205 Ala 174, 176 (1921) ("[A] person reaches a designated age on the day preceding the anniversary of his birth."); *Erwin v Benton*, 120 Ky 536, 549; 87 SW 291 (Ky App, 1905) ("In law a man is twenty-one years old on the day preceding his twenty-first birthday . . . ."); *Montoya De Antonio v Miller*, 7 NM 289, 291; 34 P 40 (1893) ("[T]he common law fixes the beginning of such period on the day preceding the twenty-first anniversary of birth . . . ."); *Ross v Morrow*, 85 Tex 172, 175; 19 SW 1090 (1892) ("The rule adopted in computing the age of a person is, that the day of his birth is included" so that age advances the day before the anniversary of birth.); *Bardwell v Purrington*, 107 Mass 419, 425 (1871) ("A person who was born on the eighth day of September 1852 would become of the full age of twenty-one years if he should live to the seventh day of that month in 1873."); *Wells v Wells*, 6 Ind 358, 359 (1855) ("If from this statement we fix his birth-day at September 23, 1828, he was of age September 22, 1849."); *State v Clarke*, 3 Del (3 Harr) 557, 558 (Ct of Oyer and Terminer, 1840) ("A person is 'of the age of twenty-one years' the day *before* the twenty-first anniversary of his birth day.").

Similarly, like the United States Court of Appeals for the Eighth Circuit in *Wright*, various federal courts have applied the common-law rule. See, e.g., *Fisher v Smith*, 319 F Supp 855, 858 (WD Wash, 1970) ("The common law rule for computing age is that one is

deemed to have reached a given age at the earliest moment of the day preceding an anniversary of birth.") (applying the common law of the state of Washington); *Turnbull v Bonkowski*, 419 F2d 104, 105 (CA 9, 1969) ("The logic of the common law rule is apparent. Since one is in existence on the day of his birth, he is, in fact, on the first anniversary of his birth, of the age of one year plus a day or some part of a day. The appellant did, then, reach the age of nineteen years on the day before the nineteenth anniversary of his birth . . . .") (applying the common law of the state of Alàska); *Taylor v Aetna Life Ins Co*, 49 F Supp 990, 991 (ND Tex, 1943) ("A year must be counted, not from the day of birth, but from the preceding day . . . . That has been the rule for so long that it may not now be successfully attacked, nor need it be labored.") (applying the common law of the state of Texas); *In re Richardson*, 20 F Cas 699, 701 (Cir Ct, D Mass, 1843) ("Thus, if a man should be born on the first day of February, at 11 o'clock at night, and should live to the 31st day of January, twenty-one years after, and should at one o'clock of the morning of that day make his will, and afterwards die by six o'clock in the evening of the same day, he will be held to be of age, and his will be adjudged good.").

### C. THE BIRTHDAY RULE

By contrast, certain other jurisdictions[7] have rejected the common-law rule in favor of the birthday rule, where "a person attains a given age on the anniversary date of his or her birth." *In re Robinson*, 120 NC App 874, 877; 464 SE2d 86 (1995). The California Supreme Court, for example, applied the birthday rule in *In re Harris*, 5 Cal 4th 813, 844-845; 21 Cal Rptr 2d 373; 855

---

[7] See, generally, 1 Restatement Contracts, 2d, § 14, Infants, comment *a*, p 37 (stating generally that "[t]he birthday rather than the preceding day is the date of majority in some States").

P2d 391 (1993). The court in *Harris* did so not by judicial fiat, but rather did so on the basis of the fact that the California Legislature had explicitly abrogated the common-law rule of age calculation by adopting a statute stating that age must be calculated " 'from the first minute of the day on which persons are born to the same minute of the corresponding day completing the period of minority' " (which the court interpreted as an intent to adopt the birthday rule). *Id.* (citation omitted).

In *State v Alley*, 594 SW2d 381, 382 (Tenn, 1980), the Supreme Court of Tennessee, while noting that the common-law rule was generally applicable in Tennessee, held that a specific statutory provision, dealing with trying minor defendants as adults for the crime of murder if they were " 'fifteen (15) or more years of age' " at the time of the offense, required the calculation of that age by use of the birthday rule. *Id.* at 383 (citation omitted). In doing so, the court recognized that the "legislative intent is not apparent from this phraseology," but it inferred a legislative intent favoring the birthday rule, in the context of the statute, from the statute's later references to "birthday" (in fixing the time for holding or transferring the defendant according to the defendant's 18th birthday). The court concluded that it was "evident that the Legislature had in mind birthdays and ages in the conventional, usual and ordinary sense of these words." *Id.*

Meanwhile, other states appear to have chosen, in the absence of statutory guidance, to adopt the birthday rule rather than the established common-law rule. See, e.g., *State v Wright*, 24 Kan App 2d 558; 948 P2d 677 (1997) (adopting the birthday rule and rejecting the "fraction of a day" argument when the offense occurred on the defendant's birthday, but before the anniversary of the moment of his birth); *In re Robinson*, 120 NC App

at 877 ("Since North Carolina courts have not expressly decided which rule applies, we hold today that the 'birthday rule' is the better approach and apply it to respondent under [the relevant juvenile delinquency statute]."); *Commonwealth v Iafrate*, 527 Pa 497, 502; 594 A2d 293 (1991) ("For purposes of the [Juvenile] Act, an individual becomes a year older on the day of his birthday and not the day before."); *Fields v Fairbanks North Star Borough*, 818 P2d 658, 661 (Alas, 1991) ("We decline to follow [the common-law rule] which defies logical explanation and which is utterly inconsistent with popular and legal conceptions of time and birthdate."); *State v Hansen*, 304 Or 169; 743 P2d 157 (1987) ("Unofficial commentary [in accordance with the birthday rule] to a separate, albeit related, provision of a code is a thin reed on which to base the interpretation of a statute. Nevertheless, we are convinced that the interpretation is correct because it accords both with the popular method for computing age and with the method by which the passage of time is computed in other areas of the law. . . . Moreover, so far as we are able to ascertain, no reported decision of any Oregon court has ever used the common-law method for calculating age."); *Patterson v Monmouth Regional High Sch Bd of Ed*, 222 NJ Super 448, 454-455; 537 A2d 696 (1987) (opting for birthday rule over common-law rule for reasons of "uniformity and familiarity" so as to "provide[] an infant more than a full measure of protected status"); *United States v Tucker*, 407 A2d 1067, 1070 (DC App, 1979) ("In the absence of any reasons supported in logic, we decline to follow a rule which defies human experience by determining age on the day preceding one's birthday. Moreover, we believe that in view of the rehabilitative purposes of our juvenile justice system, D.C. Code 1973, § 16-2301(3) should be strictly construed against the prosecution and in favor

of the person being proceeded against."); *State v Stangel*, 284 NW2d 4, 5-6 (Minn, 1979) (notwithstanding *Nelson*, 227 Minn 177, rejecting common-law rule in favor of birthday rule in liberally construing Juvenile Court Act enacted after *Nelson*, stating that "the common-law rule is so at odds with common understanding that it should be abandoned, at least in determining when a person was under the age at which the district court gains jurisdiction over people charged with committing criminal acts"); *People v Stevenson*, 17 NY2d 682, 683; 269 NYS2d 458; 216 NE2d 615 (1966) (adopting the reasoning of the dissent in *People v Stevenson*, 23 AD2d 472, 476; 262 NYS2d 238 (1965), rev'd 17 NY2d 682 (1966) (Christ, J., dissenting) ("I am confident that the common understanding [of the statute granting the Family Court jurisdiction over juveniles] is that it means the birth date itself shall control, not some artificial arrangement resulting in the day before the birth date."); *In re Smith*, 1960 Okla Crim 41; 351 P2d 1076, 1078 (Okla Crim App, 1960) (denying writ of habeas corpus, concluding that "where reference is made in the penal statutes to a 'male over eighteen years of age', that any fractional part, or the first moment, of the 18th birthday is the drawing line and constitutes him over 18 years of age . . . .").

### D. RATIONALE FOR COMMON-LAW RULE

"Although the point of origin of the [common-law] rule is uncertain, it clearly was a part of the English common law and appeared in cases decided as early as the seventeenth century." *Patterson*, 222 NJ Super at 452, citing *Nichols v Ramsel*, 2 Mod 280; 86 Eng Reprint 1072 (1677); *Herbert v Turball*, 1 Keble 590; 83 Eng Reprint 1129; 1 Sid 162; 82 Eng Reprint 1033 (1663). See also 1 Blackstone, Commentaries Abridged

(9th ed) (Chicago: Callaghan & Co, 1915), p 92 ("So that full age in male or female is twenty-one years, which age is completed on the day preceding the anniversary of a person's birth, who till that time is an infant and so styled in law.").

Perhaps the earliest expression in this country of the rationale for the common-law rule of age calculation was that of the Court of Oyer and Terminer of Delaware in 1840:

> On this question the law is well settled; it admits of no doubt. A person is "of the age of twenty-one years" the day *before* the twenty-first anniversary of his birth day. It is not necessary that he shall have entered upon his birth day, or he would be more than twenty-one years old. He is, therefore, of age the day before the anniversary of his birth; and, as the law takes no notice of fractions of a day, he is necessarily of age the whole of the day before his twenty-first birth day; and upon any and every moment of that day may do any act which any man may lawfully do. [*Clarke*, 3 Del (3 Harr) at 558, citing 1 Chit Gen Prac, 766 (emphasis in original).]

Subsequent decisions have focused on the "no fractions of a day" component of that expression to highlight the fact that age changes not only as of the day before one's birthday, but as of the first moment of that day. See, e.g., *Wright*, 197 F at 298 ("[t]he law ordinarily taking no cognizance of fractions of days, one becomes of full age the first moment of the day before" the anniversary of his birth). As to that component of the analysis, the United States Supreme Court has recognized that the "no fractions of a day" rule is not absolute:

> It is true that for many purposes the law knows no division of a day; but whenever it becomes important to the ends of justice, or in order to decide upon conflicting interests, the law will look into fractions of a day, as readily as into the

> fractions of any other unit of time. The rule is purely one of
> convenience, which must give way whenever the rights of
> parties require it. . . . The law is not made of such unrea-
> sonable and arbitrary rules. [*Louisville v Savings Bank*,
> 104 US (14 Otto) 469, 474-475; 26 L Ed 775 (1881)
> (quotation marks and citations omitted).]

In expounding this principle, the United States Su-
preme Court in *Louisville* discussed Justice Story's
opinion in *In re Richardson*, 20 F Cas 699, 702; 2 Story
571 (Cir Ct, D Mass, 1843), to emphasize the proposi-
tion that fractions of a day should be considered
" 'whenever it will promote the purposes of substantial
justice.' " *Louisville*, 104 US at 476, quoting *In re
Richardson*, 20 F Cas at 702.

In *In re Richardson*, Justice Story explained that the
rule that there is no fraction in a day is a limited
doctrine to be applied only where it will promote justice
in a case:

> I am aware, that it is often laid down, that in law there
> is no fraction of a day. But this doctrine is true only sub
> modo, and in a limited sense, where it will promote the
> right and justice of the case. *It is a mere legal fiction, and,
> therefore, like all other legal fictions, is never allowed to
> operate against the right and justice of the case.* On the
> contrary, the very truth and facts, in point of time, may
> always be averred and proved in furtherance of the right
> and justice of the case . . . . The common case put to
> illustrate the doctrine, that there is no fraction in a day, is
> the case, when a person arrives at majority. . . . Here the
> rule is applied *in favor of the party, to put a termination to
> the incapacity of infancy*. . . . So that we see, that there is no
> ground of authority, and, certainly, there is no reason to
> assert, that any such general rule prevails, as that the law
> does not allow of fractions of a day. On the contrary,
> *common sense and common justice equally sustain the
> propriety of allowing fractions of a day, whenever it will
> promote the purposes of substantial justice. Indeed, I know
> of no case, where the doctrine of relation, which is a mere*

> *fiction of law, is allowed to prevail, unless it be in further-ance and protection of rights, pro bono publico.* [*In re Richardson*, 20 F Cas at 701-702 (citations omitted; emphasis added).]

On the basis of these articulations, it is arguable that the common-law rule of age calculation (sometimes referred to as the "coming of age rule") is a flexible concept, designed to be applied only when it "promotes substantial justice" or benefits a party by extending the protections afforded to a minor. Indeed, certain courts that have rejected the common-law rule in favor of the birthday rule have so argued:

> A fiction which takes away some of the protections of minority status by eliminating any period during which one is actually an infant and requiring that infant to be treated as one of full age should be rejected. That is exactly what the coming of age rule does. . . . We think that a calculation method which foreshortens the protections with which we blanket infants must be discarded in favor of the uniform rule which provides an infant more than a full measure of protected status. For these reasons, we hold that the common law coming of age rule should be rejected in favor of our ordinary rules of calculation in deciding the date of the anniversary of one's birth. [*Patterson*, 222 NJ Super at 454-455.]

Before exploring that further, however, we note that the "no fractions of a day" concept, in and of itself, is not necessarily pertinent to the question before us, which is whether to apply the common-law rule or the birthday rule. That is because the "no fractions of a day" concept would appear to apply in *either* event, regardless of which rule is applied, and serves merely to address the related inquiry of whether age changes at a particular point in time during a day. The common-law rule and the birthday rule determine to *which* day (the birthday or the day

before) the "no fractions of a day" concept should be applied. As the court in *Velazquez* noted:

> In order to avoid disputes, the common-law rule regarding age does not recognize fractions of a day. Under the common-law rule a person is deemed to have been born on the first minute of the day of his birth. In accordance with this principle, the common-law rule for determining a person's age is that a person reaches a given age at the earliest moment of the day before the anniversary of his birth. The underlying rationale for this rule is that a person is in existence on the day of his birth; thus, he has lived one year and one day on the first anniversary of his birth.
>
> . . . *Like the common-law rule, the birthday rule does not recognize fractions of a day*; thus, under the birthday rule a person attains a given age at 12:01 a.m. or at the beginning of the anniversary date of the person's birth. [*Velazquez*, 648 So 2d at 303-304 (emphasis added; citations omitted).]

This is further apparent from the language of *Clarke* itself, which found *first* that the common-law rule applied, and *then* found that in applying the common-law rule, age was established as of the first moment of the day. *Clarke*, 3 Del (3 Harr) at 558 ("He is, therefore, of age the day before the anniversary of his birth; and, as the law takes no notice of fractions of a day, he is necessarily of age the whole of the day before his twenty-first birth day; and upon any and every moment of that day may do any act which any man may lawfully do.").

It is apparent, therefore, that the rationale for the common-law rule, while linked to the "no fractions of a day" concept, has its essential underpinnings elsewhere. Specifically, the common-law rule is premised on the rationale that "[a] person is in existence on the day of his birth. On the first anniversary he or she has lived

one year and one day." *Alley*, 594 SW2d at 382; see also *In re Harris*, 5 Cal 4th at 844; *Velazquez*, 648 So 2d at 304. In other words, the common-law rule is premised on the fact that a person is alive on the day of one's birth and, therefore, that day should be counted in the computation of one's age, so that the last day of the succeeding year (on which age therefore changes) is the day before one's birthday.

The logic of the common-law rule has long been the subject of debate. The court in *Alley* concluded that "[t]he logic of the common law rule is unassailable." *Alley*, 594 SW2d at 382. Yet assailed it has been since at least early in its application in this country. As the court stated in *Tucker*, 407 A2d at 1070, in opting for the birthday rule, "this common law exception was criticized as early as 1876 as being contrary to reason and common sense. See 1 Minor's Institute [2d ed, 472 (1876)] at 472-73." See also *Patterson*, 222 NJ Super at 453 ("This rule has been criticized regularly over the course of its history. . . . If, as it has been said, the logic of the coming of age rule is unassailable, the logic of our computation rule, which would skip the day of birth recognizing that few people actually have lived out the entirety of that day, is equally unassailable.") (citations omitted). Yet, others have criticized the critics of the common-law rule. See, e.g., 5 ALR2d 1143, 1145, § 2 (footnotes omitted) ("[Professor] Minor's assertion that at early common law attainment of a given age was delayed until the anniversary of birth is not supported by his single citation, and existence of authority for his conclusion is most doubtful."); *Erwin*, 120 Ky at 550 (finding that the common-law rule "is supported by the great majority of the adjudged cases; indeed, the courts seem quite unanimous on the point. . . . Professor Minor assails the doctrine as absurd. . . . Redfield also seems to regard it as 'a blunder.' . . . But it has been too

long established now to depart from it, particularly as no good could come from the change.") (citing 1 Minor's Institute, p 514, and Redfield, Law of Wills, p 19; other citations omitted).

What appears true regardless of the logic, or lack thereof, of either the common-law rule or the birthday rule, is that *both* are legal fictions. As the court stated in *Patterson*:

> Whether we compute age by the common-law method (counting the date of birth), or by our uniform method (excluding the date of birth) we are diverging from what, in fact, is real. Only the Roman principle of *de momento en momentum* reflects the reality of time: that a person comes to his next age one year from the exact moment of the person's birth not from the earliest or latest instant of the day on which he was born. There are good reasons involving uniformity of approach and avoidance of litigation to reject a rule requiring proof as to the very second of one's birth in order to ascertain one's rights some years later. *The only question is what fiction shall take its place. Both the common law coming of age rule and the ordinary calculation rule are such fictions.* [*Patterson*, 222 NJ Super at 453-454 (emphasis added).]

Further, given that both rules are fictions, the above-quoted commentary of Justice Story, although stated in dicta and with reference specifically to the "no fraction of a day" fiction, arguably applies to either rule. That is, according to Justice Story's reasoning, all such fictions are not without exception, but instead should be applied "whenever it will promote the purposes of substantial justice" and "in furtherance and protection of rights," and should "never [be] allowed to operate against the right and justice of the case." *In re Richardson*, 20 F Cas at 701-702.

It has thus been suggested that the common-law rule of age calculation should be applied only when doing so

favors the interests of the minor. See, e.g., 5 ALR2d 1143, 1145, § 2, n 5 ("Acceleration of the legal advantage of majority attained as the reason for inclusion of the day of birth in computation of age was suggested in a dictum by Judge Story in a bankruptcy case, *Re Richardson* . . . where it was stated . . . 'Here the rule is applied in favor of the party, to put a termination to the incapacity of infancy.' ") (citing *In re Richardson*, 20 F Cas at 701-702). Further, the court in *Tucker* has opined, with regard to the common-law rule, that "[t]his legal fiction therefore was originally established *to aid persons who would experience hardship or loss by virtue of the general rule of computation." Tucker*, 407 A2d at 1070 (emphasis added).

Whether that assessment is accurate or not, our review of the caselaw suggests that the common-law rule has not always been applied in furtherance of such an objective. Rather, where the common-law rule has been held to apply, it has at least sometimes been applied irrespective of the perceived equities. And other courts have been critical as a result. See, e.g., *Tucker*, 407 A2d at 1070 ("The courts which have adopted it have candidly admitted that rather than being persuaded by the soundness of its application, they have adopted it on the basis that it was so well established over a long period of time that the rule attained an independent status of its own."); *Patterson*, 222 NJ Super at 453 ("The courts of other jurisdictions, relying mainly on the longevity of the rule, have *listlessly* continued to apply it as an exception to ordinary rules of calculation.") (emphasis added; citation omitted).

The problem, of course, in applying a legal fiction when and if a court perceives it as "promot[ing] the purposes of substantial justice" and "in furtherance and protection of rights," as Justice Story suggested, is

that persons (and courts) can have differing viewpoints regarding when those ends are achieved. For example, a criminal defendant and a crime victim are likely to perceive them quite differently. Moreover, such a fluid application does not lend itself to the goal of clarity in the law; rather, clarity would give way to flexibility on the part of the courts in applying the rule when and only when they perceived it as promoting justice.

Further, were we to find that the common-law rule applies in Michigan, and that it has been applied without regard to whether a party is affected positively or negatively, we then would face the dilemma of whether to, "listlessly" or not, follow the caselaw that has preceded us, under the long-standing doctrine of stare decisis, see *Parker v Port Huron Hosp*, 361 Mich 1, 10; 105 NW2d 1 (1960), and we would plunge into the age-old debate about when, if at all, the courts should change the common law. See, e.g., *Woodman v Kera LLC*, 486 Mich 228, 257-258; 785 NW2d 1 (2010). And in that regard, we are mindful that we are an error-correcting court. *Burns v Detroit (On Remand)*, 253 Mich App 608, 615; 660 NW2d 85 (2002). As such, we must confine our role to that function. Were we inclined to effect a significant change to Michigan law, such as by abrogating established common law in favor of a rule more to our liking, "prudence would counsel against it because such a significant departure from Michigan law should only come from our Supreme Court [or the Legislature], not an intermediate appellate court." *Teel v Meredith*, 284 Mich App 660, 666; 774 NW2d 527 (2009) (declining to recognize a cause of action for spoliation of evidence); see also *Dahlman v Oakland Univ*, 172 Mich App 502, 507; 432 NW2d 304 (1988) (declining to recognize a cause of action for breach of an implied covenant of good faith and fair dealing "because

such a radical departure from the common law and Michigan precedent should come only from the Supreme Court.")

We will consider these and other issues as we evaluate the state of the law as it has been applied in Michigan.

### E. APPLICATION IN MICHIGAN

It appears from our review that no Michigan court has directly considered the issue before us. We therefore address the issue as a matter of first impression. In doing so, we will first endeavor to discern whether *Miller* mandates, or other federal authorities suggest, a particular outcome in Michigan. We will then address Michigan law as reflected in the Michigan Constitution and in expressions of the Michigan Legislature, Michigan Supreme Court, and Michigan Attorney General.

In undertaking this analysis, we are mindful that our decision could have ramifications far beyond the narrow factual circumstance that is presented in this case. As important as our decision certainly is in the context of defendant and this case, the determination of the precise moment at which age is determined could have broad implications in other areas as well, e.g., in determining who is eligible to vote, to consume alcoholic beverages, to marry, and to enter into contracts, as well as in determining who may be required to attend school (and when).[8] Our decision further may have implica-

---

[8] Our decision further may have implications regarding the processes that are employed by those who are responsible for ascertaining whether such eligibility or other requirements have been met and for enforcing the law in those circumstances. Generally, the documentation utilized for such purposes includes a proof of age in the form of a photographic identification card, a birth certificate, or an affidavit or other statement reflecting date of birth. See, e.g., MCL 168.495 (voting eligibility);

tions in the context of various criminal prosecutions, such as criminal sexual conduct charges that may require a precise determination not only of the defendant's age, but also that of the victim. See, e.g., MCL 750.520b to MCL 750.520d. Given the broad reach of these and other matters potentially implicated by the decision before us, we are particularly cognizant of the need for clarity in the law.[9]

As will become apparent as we progress through our analysis, we note at the outset that none of the authorities we have reviewed appears to definitively answer the question before us to any level of certainty. This indeed gives us pause, given that we are mindful that our proper role is to interpret, not to make, the law. See *Mich Residential Care Ass'n v Dep't of Social Servs*, 207 Mich

---

MCL 436.1203 (alcoholic liquor sales); MCL 551.103 (marriage eligibility); MCL 600.1403(2) (minor's ability to void a contract not available if minor represented with written document that he or she had reached the age of majority). We think it likely that persons charged with confirming age by such mechanisms typically, according to the common understanding of age calculation, assess age according to the date of birth reflected in the documentation (as would be consistent with the birthday rule), rather than by a computation that subtracts one day from the age suggested by the documentation (as would be consistent with the common-law rule of age calculation).

[9] Indeed, other courts have properly foreshadowed additional issues that could arise in applying the common-law rule of age calculation:

Because the rule is footed in a calculation at the point of one's birth, it does not simply affect the single transition between infancy and minority but every single relevant annual calculation from birth for a lifetime. This underscores a separate problem. How does the coming of age rule interface with the regulatory schemes in effect in this State? Did the Legislature intend that one could drive on the eve of his or her 17th birthday, vote on the eve of his or her 18th birthday and consume alcoholic beverages on the eve of his or her 21st birthday? Does the coming of age rule constitute a defense in a case in which one is charged with engaging in such act prior to the statutorily prescribed date? [*Patterson*, 222 NJ Super at 455 n 4.]

App 373, 377; 526 NW2d 9 (1994). We also note that defendant does not specifically argue that this Court should abrogate the common law by adopting the birthday rule; rather, defendant argues that the United States Supreme Court required the use of the birthday rule in *Miller* or, in the alternative, that the Michigan Legislature has already adopted such a rule. Those arguments would seem to presume, of course, that the common-law rule was previously applicable in Michigan. We examine each of those arguments, and others, in this opinion.

### 1. *MILLER*

Defendant contends that a reference to the term "birthday" in Justice Alito's *dissent* in *Miller*, 567 US at ___; 132 S Ct at 2489; 183 L Ed 2d at 445 (in the context of a murder occurring "just nine months shy of [the perpetrator's] 18th birthday"), as well as language from Justice O'Connor's *dissent* in *Roper v Simmons*, 543 US 551, 587, 598; 125 S Ct 1183; 161 L Ed 2d 1 (2005) (which presented the very "nine month" circumstance later referenced by Justice Alito in his *dissent* in *Miller*), indicate that the majority opinion in *Miller* meant to establish a blanket rule for age calculation, essentially wiping out the common-law rule in all jurisdictions. Generally speaking, however, we do not believe that isolated references in dissenting opinions suffice to accomplish a change in the law. See *Rohde v Ann Arbor Pub Sch*, 265 Mich App 702, 707; 698 NW2d 402 (2005) (dissenting opinions are neither precedential nor binding). Simply put, the issue before us was not presented in *Miller* (where the defendants were 14 years old at the time of the murder) or *Roper* (where, as noted, the defendant was approximately "nine months shy" of turning 18) and in that context a passing reference to the word "birthday" in a dissenting opinion would not have merited a response from the

majority to put a fine point on an issue that was neither before the Court nor intended to be parsed by either the dissent or the majority.

The circumstances of *Miller* further suggest that the Supreme Court did not consider the issue now before us. The two defendants in *Miller* were convicted, *inter alia*, of capital crimes. One was convicted, under Arkansas law, of capital felony murder. The other was convicted, under Alabama law, of murder in the course of committing an arson. *Miller*, 567 US at ___; 132 S Ct at 2461-2463; 183 L Ed 2d at 415-417. In neither defendant's case was it necessary to precisely calculate the defendant's age according to either the common-law rule of age calculation or the birthday rule. Both of the defendants were 14 years old at the time of their respective crimes.

Were it to have considered the issue, we believe the Supreme Court would have found the underlying law in Arkansas and Alabama (regarding age calculation) muddled and worthy of distinguishing and clarifying. The Arkansas Juvenile Code, for example, defines a "juvenile" in pertinent part as "an individual who is . . . [f]rom birth to eighteen (18) years of age . . . or [who is] [a]djudicated delinquent . . . prior to eighteen (18) years of age and for whom the juvenile division of circuit court retains jurisdiction[.]" Ark Code Ann 9-27-303. It does not indicate how age is to be calculated. The court in *Allen v Baird*, 208 Ark 975; 188 SW2d 505 (1945), in considering statutory age eligibility requirements for employment in the Little Rock police and fire departments, used language consistent with the birthday rule in concluding that persons are not "over" a given age "until they reach their [next] birthday." *Id.* at 977.[10]

---

[10] We note that the holding in *Allen* is expressly contrary to the holding of our Michigan Supreme Court in *Bay Trust Co v Agricultural Life Ins Co*, 279 Mich 248, 252; 271 NW 749 (1937), discussed later in this opinion.

The court provided no analysis, however, and the circumstances presented no need for a pinpoint computation of time.

In Alabama, by contrast, the courts had long endorsed the common-law rule of age calculation. See *Frost*, 153 Ala at 664 ("[A] person reaches a designated age on the day preceding the anniversary of his birth."). The subsequently adopted Alabama Juvenile Justice Act, Ala Code 12-15-102, however, establishes juvenile court jurisdiction over a "minor" and "child." It defines "child" in § 12-15-102(3) as "[a]n individual under the age of 18 years, or under 21 years of age and before the juvenile court for a delinquency matter arising before that individual's 18th birthday." *Id*. Further, "[w]here a delinquency petition alleges that an individual, prior to the individual's 18th birthday, has committed an offense for which there is no statute of limitations . . . , the term child also shall include the individual subject to the petition, regardless of the age of the individual at the time of filing." *Id*. Although we are not aware that the Alabama Legislature has expressly abrogated the common-law rule, its use of the term "birthday" in this context suggests that it may consider a birthday to be the date on which age changes.[11]

Regardless of the state of the law in the underlying jurisdictions of Arkansas and Alabama, however, the

---

[11] The Alabama code further defines a "minor" as "[a]n individual who is under the age of 19 years and who is not a child within the meaning of this chapter." Ala Code 12-15-102(18). While this provision does not address when an individual reaches the age of 19, the court in *Alabama Dep't of Mental Health v ECJ*, 84 So 3d 926 (Ala Civ App, 2011), concluded that "the juvenile court's . . . commitment order necessarily expired when E.C.J. reached the age of 19" and that the "juvenile court erred in holding that its . . . order remained in effect beyond E.C.J.'s 19th birthday . . . ." *Id*. at 929-930. Whether the court intended to expressly endorse the birthday rule of age calculation, as opposed to the common-law rule of age calculation, is unclear.

Supreme Court in *Miller* did not address it, did not distinguish the law of those states one from the other or from that of any other state, and did not expressly endorse or reject either the common-law rule of age calculation or the birthday rule. What the Supreme Court opinions do suggest, however, is that our society's common parlance, in gauging age according to one's birthday, extends even to the United States Supreme Court when not expressly and precisely considering an issue not presented to it. While not dispositive, that fact serves to inform our analysis.

### 2. OTHER FEDERAL AUTHORITIES

Although defendant was convicted in a Michigan state court of a Michigan state-law crime, we think it prudent to briefly review certain federal authorities, insofar as they may also inform our analysis. In particular, we note that the federal criminal statutory scheme includes the federal Juvenile Delinquency Act, 18 USC 5031 *et seq.* As the United States Court of Appeals for the Second Circuit has described, this act "establishes certain procedural protections for juveniles . . . that may remove them from the ordinary criminal justice system and place them in a separate scheme of treatment and rehabilitation." *United States v Hoo*, 825 F2d 667, 669 (CA 2, 1987).[12]

---

[12] *Hoo* describes the federal Juvenile Delinquency Act as "set[ting] forth, *inter alia*, the prerequisites for the exercise of federal jurisdiction over juvenile defendants, standards governing the disposition of juveniles found to be delinquent and the procedures for the transfer of juveniles to adult status." *Id.* at 669 n 1. *Hoo* continued:

Specifically, a juvenile alleged to have committed an act of juvenile delinquency may not be prosecuted in a federal district court unless the Attorney General certifies to the court that (1) state courts either do not have, or will refuse to exercise, jurisdiction over the juvenile; (2) the appropriate state does not have "available

Although this federal statutory scheme applies only in federal courts, 18 USC 5032, its provisions have not escaped the notice of the United States Supreme Court in assessing the validity, under the Eighth Amendment, of state-law sentencing schemes. See *Graham v Florida*, 560 US 48, 62; 130 S Ct 2011; 176 L Ed 2d 825 (2010) (citing, in part, § 5032 of the federal Juvenile Delinquency Act in noting that, like the laws of many states, "[f]ederal law also allows for the possibility of life without parole for offenders as young as 13."). The Court's decision in *Graham* was a precursor to its decision in *Miller*, 567 US at ___; 132 S Ct at 2463; 183 L Ed 2d at 418, where the Court described *Graham* as holding that the Eighth Amendment prohibits a sentence of life without the possibility of parole for a juvenile convicted of a nonhomicide offense.

The federal act defines "juvenile" as follows:

> For the purposes of this chapter, a "juvenile" is a person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday, and "juvenile delinquency" is the violation of a law of the United States

programs and services adequate for the needs of juveniles"; or (3) the offense charged is a "crime of violence that is a felony," or is one of several specifically enumerated narcotics-related offenses. The Act also provides that a juvenile who is adjudicated to be a delinquent may be placed on probation or may be committed to the custody of the Attorney General, but may not be "placed or retained in an adult jail or correctional institution." When a juvenile who is not a previous offender is alleged to have committed a violent felony or one of several specified narcotics-related offenses, the Attorney General may make a motion to transfer the juvenile to adult proceedings. This motion may be granted if the district court "finds, after hearing, [that] such transfer would be in the interest of justice" given, among other things, the juvenile's age, background and maturity. For certain previous offenders, however, transfer is automatic. [*Id.* (citations omitted).]

committed by a person prior to his eighteenth birthday
which would have been a crime if committed by an adult or
a violation by such a person of section 922(x). [18 USC
5031.]

By defining a "juvenile" and "juvenile delinquency"
according to whether a person has "attained [a] birth-
day" or committed a wrongful act "prior to his eigh-
teenth birthday," it would certainly appear that, in
enacting the federal Juvenile Delinquency Act, Con-
gress had in mind the birthday rule of age calculation.[13]
Certainly, this is not dispositive of whether the
common-law rule of age calculation or, alternatively, the
birthday rule, is in effect under the laws of Michigan or
any other state, but it is another factor that informs our
analysis.

### 3. THE MICHIGAN CONSTITUTION

Article 3, § 7 of the current 1963 Michigan Constitu-
tion states, "[t]he common law and the statute laws
now in force, not repugnant to this constitution, shall
remain in force until they expire by their own limita-
tions, or are changed, amended or repealed." This
constitutional provision raises several questions rela-
tive to our consideration of whether the common-law
rule of age calculation applies in Michigan: (1) whether
the common-law rule of age calculation was "now in
force," i.e., was in force at the time of the adoption of
the 1963 Michigan Constitution; (2) if so, whether it is
"repugnant to this constitution"; and (3) whether, if

---

[13] We further note that Congress also seemed to have birthdays in mind
when calculating age at a later stage in life. See, e.g., 10 USC 7084 ("[a]
civilian member [of the teaching staffs of the United, States Naval
Academy and United States Naval Postgraduate School] may be retired
at any time after his sixty-fifth birthday, and shall be retired by June 30
following that birthday").

then in force in Michigan, it has "expire[d] by [its] own limitations," or has been "changed, amended or repealed."

We are aware of no authority suggesting that the common-law rule of age calculation is "repugnant to [the] constitution," or that it "expire[d] by [its] own limitations." We will address together the remaining questions of whether the common-law rule was "in force" at the time of the adoption of the 1963 Constitution and whether it has been "changed, amended or repealed." We do so because in the overall context of Michigan's constitutional history, the two questions largely meld into one.

The natural presumption is that, absent evidence to the contrary, the common-law rule was indeed "[then] in force," at the time of the adoption of the 1963 Constitution. That presumption is arguably supported by the language of earlier versions of the Michigan Constitution, insofar as it relates to the applicability of the common law before 1963. In particular, we note that Michigan's first Constitution, which was adopted two years before Michigan became a state, did not specifically refer to the "common law," but stated that "[a]ll laws now in force in the territory of Michigan, which are not repugnant to this constitution, shall remain in force until they expire by their own limitations, or be altered or repealed by the legislature." Const 1835, sched § 2. Presumably, the reference to "[a]ll laws" includes the then-existing common law, even though the specific constitutional reference to the common law did not arise until later. See *Woodman*, 486 Mich at 267 (opinion by MARKMAN, J.) ("each of [Michigan's] constitutions (starting in 1835) generally adopted the common law").

The first specific constitutional reference to the "common law" appeared in the Michigan Constitution

of 1850, which stated that "[t]he common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations or are altered or repealed by the legislature." Const 1850, sched § 1. The Michigan Constitution of 1908, which is the last constitution adopted in Michigan before the current Constitution in 1963, similarly stated, "[t]he common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are altered or repealed." Const 1908, sched § 1.

This history suggests that the common law generally carried over from England[14] at the time of the adoption of Michigan's very first Constitution in 1835. The question then arises regarding whether the common-law rule of age calculation continued to be applicable in Michigan throughout Michigan's history, so as to continue to be "in force" upon the adoption of the current 1963 Michigan Constitution.

To answer that question, we must consider the differing verbiage that appears in Michigan's four Constitutions relative to altering the common law. As noted, the current 1963 Constitution provides, in pertinent part, that the common law that is "now in force" shall

---

[14] As Justice Markman has described:

The common law originated in the decisions of English judges, starting in the early Middle Ages, and developed over the ensuing centuries. . . . Sir Edward Coke explained that the common law was the "custom of the realm." . . . He indicated that if a custom was "current throughout the commonwealth," it was part of the common law. . . . Sir William Blackstone similarly discussed "[g]eneral customs; which are the universal rule of the whole kingdom, and form the common law." . . . .

The "common law and its institutions were systemically extended to America, at least insofar as appropriate for frontier conditions." [Woodman, 486 Mich at 266-267 (opinion by Markman, J.) (citations omitted).]

"remain in force until . . . *changed, amended or repealed.*" Const 1963, art 3, § 7 (emphasis added). By contrast, the preceding 1908 Constitution provided, in pertinent part, that the common law that is "now in force" shall "remain in force until . . . *altered or repealed.*" Const 1908, sched § 1 (emphasis added). Significantly, both the earlier 1850 Constitution and the original 1835 Constitution (the latter by the implicit inclusion, as noted, of the common law within the term "[a]ll laws") provided, in pertinent part, that the common law that is "now in force" shall "remain in force until . . . *altered or repealed by the legislature.*" Const 1850, sched § 1 (emphasis added); Const 1835, sched § 2 (emphasis added).

As the emphasized language demonstrates, Michigan's four Constitutions employed different terms in describing the conditions under which the common law would no longer remain in force. From 1835 to 1908, the Constitutions provided that the common law would remain in force "until . . . *altered or repealed by the legislature.*" From 1908 to 1963, the Constitution provided that the common law would remain in force "until . . . *altered or repealed.*" And since 1963, the Constitution has provided that the common law would remain in force "until . . . *changed, amended or repealed.*"

In interpreting the quoted language from the 1963 Michigan Constitution, our Supreme Court has stated, "The meaning of the article is readily discernible. The common law as well as statutes abide unless 'changed, amended or repealed.' 'Amendment' and 'repeal' refer to the legislative process. 'Change' must necessarily contemplate judicial change. The common law is not static, fixed and immutable as of some given date." *Myers v Genesee Co Auditor*, 375 Mich 1, 7; 133 NW2d

190 (1965) (opinion by O'HARA, J.) (emphasis omitted); see also *Placek v Sterling Hts*, 405 Mich 638, 657; 275 NW2d 511 (1979) ("This provision has been construed to authorize both judicial change and legislative amendment or repeal.") (citing *Myers*, 375 Mich at 7); *Woodman*, 486 Mich at 269 (opinion by MARKMAN, J.) ("Thus, the ability to alter the common law is constitutionally vested in both the Legislature and the judiciary.").

Indeed, given that the common law has its genesis in decisions of judges, it is unsurprising that the judiciary would also be empowered to change the common law. As Justice MARKMAN has stated, "[o]ur constitution gives the judiciary the authority to change the common law because the common law is 'judge-made law.' " *Id.* at 271 (MARKMAN, J.) (emphasis omitted), citing *Placek*, 405 Mich at 657.

That said, however, it must again be noted that before 1963, the Michigan Constitution did not contain the language "changed, amended or repealed." Beginning in 1908, the pertinent constitutional language instead was "altered or repealed." As stated in *Myers* and *Placek*, "repeal" relates to the legislative process. But those cases did not address the meaning of "altered" in this context, because that term did not exist in the Constitution at the time of those decisions. We conclude, however, in part on the basis of Justice MARKMAN's reasoning and his use of the term "alter" in describing the authority of the judiciary relative to the common law, that the 1908 Constitution (like the 1963 Constitution) authorized the judiciary to alter the common law. See *Woodman*, 486 Mich at 269 (opinion by MARKMAN, J.) ("Thus, the ability to *alter* the common law is constitutionally vested in both the Legislature and the judiciary.") (emphasis added). We further note that the Michigan Supreme Court indeed altered the

common law in certain respects even before the adoption of the 1963 Constitution, thereby demonstrating that it perceived that it had the constitutional authority to do so at that time. See, e.g., *Williams v Detroit*, 364 Mich 231, 255; 111 NW2d 1 (1961) (opinion by EDWARDS, J.)[15] (finding constitutional authority for judicial overruling of the common-law doctrine of governmental immunity relative to municipalities), superseded by statute as stated in *Mack v Detroit*, 467 Mich 186; 202; 649 NW2d 47 (2002). This lends further support to our conclusion that the "altered or repealed" language of the then-effective 1908 Constitution contemplated both legislative and judicial action relative to effecting changes to the common law.

That brings us to our next observation, i.e., that Michigan's 1835 and 1850 Constitutions provided that the common law shall "remain in force until . . . *altered or repealed by the legislature.*" Const 1850, sched § 1 (emphasis added); Const 1835, sched § 2 (emphasis added). The specific constitutional reference to the "legislature" suggests that, notwithstanding the fact that the common law is "judge-made law," the then-effective common law was alterable only by the Legislature, and not by the judiciary, during the effective dates of the 1835 and 1850 Constitutions, i.e., from 1835 to 1908. The deletion of the language "by the legislature" upon the adoption of the 1908 Constitution further suggests that, from that date forward, the common law could be altered not only by the Legislature, but also by the judiciary. See, e.g., *People v*

---

[15] In *Williams*, the decision of the trial court was affirmed by an equally divided Court. Chief Justice DETHMERS and Justice KELLY concurred with the opinion of Justice CARR for affirmance and Justice BLACK wrote a separate opinion for affirmance. Justices SMITH, KAVANAGH, and SOURIS concurred with the opinion of Justice EDWARDS for reversal.

*Henderson*, 282 Mich App 307, 328; 765 NW2d 619 (2009) (deriving legislative intent from a change in statutory language). Before the adoption of the 1963 Constitution, four of the eight justices of our Supreme Court found that 1908 constitutional revision to be a "significant omission," concluding that "[c]learly, the Constitution presents no barrier to removal of an unjust rule—by the action of the Court which made it." *Williams*, 364 Mich at 255 (opinion by EDWARDS, J.) (see n 15 of this opinion).

Later in this opinion, we will discuss whether the Legislature or the judiciary has in fact done so with respect to the common-law rule of age calculation.

### 4. MICHIGAN ATTORNEY GENERAL OPINIONS

Our Attorney General has twice opined, in noncriminal contexts, that Michigan would adhere to the common-law principle that one reaches an age on the day preceding the anniversary of his or her birth. Both of these opinions predated the adoption of the current Michigan Constitution in 1963, and were issued while the Constitution of 1908 was in effect. First, in 1929, Attorney General Wilber M. Brucker rendered an opinion stating that a foreign-born child who became 21 years of age (which then was the age of majority) on the very day that his father became a citizen of the United States did not obtain the right to vote by virtue of his father's citizenship because he was no longer a minor child at that time. Attorney General Brucker opined that under the law it mattered not that the son was born in the afternoon, and that the father became a citizen in the morning of the anniversary of that day, because "the law does not recognize fractions of days." See OAG, 1928-1930, pp 247-248 (February 27, 1929).

In rendering that opinion, Attorney General Brucker stated that "[o]ne becomes of full age on the day preceding the twenty-first anniversary of his birth on the first moment of that day." *Id.* at 248. That, of course, is the portion of the opinion that is pertinent to the issue before us. But its significance and legal import is somewhat called into question by the fact that this quoted portion of the opinion was not pertinent to the precise issue that was presented to the Attorney General. In that matter, the pivotal event (citizenship) occurred on the very day on which the child attained the age of majority. Therefore, an endorsement of the "day before" component of the common-law rule of age calculation was not essential to answering the question that was the subject of the Attorney General opinion. What *was* essential was his endorsement of the "no fraction of a day" concept.

It is also noteworthy that the authorities on which Attorney General Brucker based his opinion did not include any caselaw, statute, or other authority from Michigan. Rather, the opinion cited only 31 CJ 987 (which itself contained no Michigan citations), as well as cases from Delaware and Indiana state courts.

Subsequently, in 1956, Attorney General Thomas M. Kavanagh (who later served as Chief Justice of our Michigan Supreme Court) was asked for an opinion regarding whether a person whose birthday is the day following an election is eligible to vote in that election. Attorney General Kavanagh opined that the person was eligible. 2 OAG, 1955-1956, No. 2677, pp 402-403 (July 13, 1956). The question as posed noted that " '[i]t appears that under common law, a person is twenty-one at the beginning of the day preceding his anniversary and there seems to be no statute law in Michigan to the contrary.' " *Id.* at 402. In response,

Attorney General Kavanagh accepted the premise of the question, noting that "[a]s indicated by you, under the common law rule one attains the age of twenty-one years 'the first moment of the day before his twenty-first anniversary.' " *Id.* The support for that statement consisted of citations of the Eighth Circuit's decision in *Wright*, a single New York state court case, 43 CJS, Infants, § 3, and 27 Am Jur, Infants, § 5. In reliance on those authorities, Attorney General Kavanagh opined as follows, "[t]here being no statute to the contrary, such common law rule is, in the opinion of the Attorney General, in effect in this state." *Id.* at 403.

Interestingly, and while this opinion indeed depended on application of the common-law rule of age calculation (because the election occurred the day before the voter's birthday), the question as presented to Attorney General Kavanagh assumed its applicability as a fact, and specifically inquired whether the voter satisfied the then-applicable qualification for being an elector, as set forth in Article 3, § 1 of the then-effective 1908 Michigan Constitution, that the elector be "*above* the age of 21 years." (Emphasis added.) Attorney General Kavanagh's conclusion was that the law does not "differentiate between parts of a day," and therefore that the then-applicable constitutional language ("above the age of 21 years") was "synonymous" with the language "attained the age of twenty-one years."[16] *Id.* at 403. Again, therefore, the Attorney General's ultimate conclusion was not dependent on his preliminary acceptance of the presumption of the applicability of the common-law rule of age calculation in Michigan, and

---

[16] The current 1963 Michigan Constitution describes the qualifications of electors with the language, "has attained the age of 21 years." Const 1963, art 2, § 1.

therefore again does not translate definitively to the question presented in this case.

Such opinions, while not binding on this Court, can be persuasive authority. *Williams v Rochester Hills*, 243 Mich App 539, 557; 625 NW2d 64 (2000). We therefore evaluate their persuasiveness in the overall context of our analysis.

### 5. MICHIGAN STATUTES AND COURT RULES

Defendant calls attention to MCR 6.903(E) as evidence that the Michigan Court Rules provide for use of the birthday rule. Indeed, MCR 6.903(E) provides that a juvenile is "a person 14 years of age or older, who is subject to the jurisdiction of the court for having allegedly committed a specified juvenile violation on or after the person's 14th birthday and before the person's 17th birthday." Defendant further points out that this Court in *Carp* referred to MCR 6.903(E) in determining that *Miller* applied to defendants between the ages of 17 and 18. *Carp*, 298 Mich App at 536-537. Defendant also notes that the "Note to 2003 Amendment" following MCR 6.903 indicates that the 2003 amendments to the rule "adjust several definitions to conform to statutory changes . . . reducing the age of juveniles subject to the provisions to 14 years[.]" The note refers, in part, to MCL 712A.2(a)(1), MCL 764.1f, and MCL 600.606.

In a note by the Reporter, it was indicated that subchapter 6.900 was adopted April 13, 1989, "in response to 1988 PA 51-54, 64, 67, 73, 75-78, and 182 . . . ." 432 Mich ccii (1989). These citations refer to public acts establishing and amending the jurisdiction of the family division of the circuit court over juveniles, MCL 712A.2; the adoption of the law authorizing a prosecuting attorney to seek an arrest warrant for a juvenile who has committed a juvenile violation,

MCL 764.1f; the adoption and amendment of the Juvenile Facilities Act, MCL 803.221 *et seq.*; and the adoption of the law allowing the family division to waive jurisdiction over a juvenile who has committed a felony, MCL 712A.4. The Note to the 2003 Amendment stated, in part, that the rule was amended to "conform to" certain statutory changes reducing the age of juveniles to 14 years. See 467 Mich cccxxxv; cccxxxix (2003).

While the language employed by our Supreme Court in MCR 6.903 indeed informs our analysis, we must conclude that in adopting MCR 6.903, our Supreme Court acted to put into effect a court rule in *conformity* with the policy choices of the Michigan Legislature, as expressed in the public acts (or perhaps in conformity with the law as set forth in its prior opinions, as discussed later in this opinion). It did not act by court rule to put into effect a policy choice *different* from that expressed by the Legislature. We further conclude that the determination whether a defendant is a juvenile, rather than an adult, concerns a substantive rule of law, not a procedural one. See *McDougall v Schanz*, 461 Mich 15, 35; 597 NW2d 148 (1999) (Substantive rule of law reflects policy considerations rather than the "mere dispatch of judicial business."). Court rules cannot intrude upon substantive rules of law. *In re Gordon Estate* , 222 Mich App 148; 564 NW2d 497 (1997); see also *People v Conat*, 238 Mich App 134, 164; 605 NW2d 49 (1999). Thus, even if we were to read MCR 6.903(E) as suggesting that age is determined by one's birthday, that conclusion should not prevail by virtue of the court rule alone, but rather should derive from statute (or prior court precedent). Statutory language prevails over court rule language in regard to substantive matters. *Conat*, 238 Mich App at 163. Thus, it is in statutory language that this Court should look to ascertain the intent of the Legislature relative to the computation of age.

However, none of the statutes or public acts referred to in the notes to MCR 6.903 or the related Supreme Court orders make reference to the calculation of age by the use of a defendant's birthday (or otherwise, for that matter). For example, MCL 712A.2(a) establishes in the family division of circuit courts certain exclusive jurisdiction over juveniles "under 17 years of age . . . ." MCL 712A.4(1) authorizes the waiver of that jurisdiction if the offense, if committed by an adult, would be a felony and the accused juvenile is "14 years of age or older . . . ." MCL 764.1f(1) authorizes the filing of a complaint for specified juvenile violations committed by a juvenile "14 years of age or older but less than 17 years of age . . . ." The Probate Code and the Juvenile Facilities Act define a "juvenile" as a person who is less than or under "17 years of age . . . ." MCL 712A.1(1)(h); MCL 803.222. MCL 600.606(1) simply states that "[t]he circuit court has jurisdiction to hear and determine a specified juvenile violation if committed by a juvenile 14 years of age or older and less than 17 years of age[,]" while MCL 764.27 merely refers to "a child less than 17 years of age . . . ."[17]

We therefore do not find in these statutes alone any legislative intent to abrogate the common law with respect to the method for calculating age. As noted, the above-referenced statutes refer to a juvenile as being of, "under," "less than," or "over" a certain age. They do not purport to alter the common-law rule for determining how that computation is made.

Defendant also refers this Court to a reference to birthdays in the Youthful Trainee Act (YTA), MCL 762.11(1):

---

[17] MCL 712A.18, also under the Probate Code, pertains to orders of disposition of juveniles and refers to individuals "not less than 18 years of age" and "not less than 17 years of age . . . ." MCL 712A.18(1)(b), and (e).

[I]f an individual pleads guilty to a criminal offense, committed on or after the individual's seventeenth birthday but before his or her twenty-first birthday, the court of record having jurisdiction of the criminal offense may, without entering a judgment of conviction and with the consent of that individual, consider and assign that individual to the status of youthful trainee.

The classification of "youthful trainee" is created entirely by statute. "The YTA offers a mechanism by which youths charged with committing certain crimes between their seventeenth and twenty-first birthdays may be excused from having a criminal record." *People v Bobek*, 217 Mich App 524, 528-529; 553 NW2d 18 (1996).

We do not find the YTA's reference to "birthdays" conclusive because nothing in the act purports to alter or affect the process used to calculate an individual's age for the purpose of determining juvenile status. The fact that the Legislature placed temporal limitations on the assignment of "youthful trainee" status does not necessarily mean that, by implication, the Legislature abolished the common-law rule of age calculation for all purposes. To the contrary, the fact that the Legislature made reference to birthdays in the YTA, while refraining from such a reference in other statutes relating to juveniles, arguably may suggest different meanings. *U S Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 14; 795 NW2d 101 (2009). However, this statutory reference to "birthdays" is another factor informing our analysis.

Other Michigan statutes have addressed age in a variety of ways. The Age of Majority Act, MCL 722.51 *et seq.*, sets the legal age of adulthood at 18 years of age and provides that an adult of legal age is "a person who is at least 18 years of age on or after January 1, 1972 . . . ." MCL 722.52(1). However, the act makes no

mention of the method of age calculation to be used. MCL 552.17a(1) provides for the jurisdiction of a divorce court over minor children of the parties "until each child has attained the age of 18 years . . . ." MCL 257.314 indicates that the expiration of operator's and chauffeur's licenses occurs on the licensee's birthday[18] in the relevant year. MCL 257.314(1) to (3). Similarly, vehicle registrations issued by the Secretary of State generally expire on the owner's birthday, with a few specific exceptions. MCL 257.226(1), (2), (5)(c), and (6).

Michigan's Revised School Code requires a child who turns age 11 on or after December 1, 2009, or a child who was age 11 before that date and enters grade 6 in 2009 or later to attend public school "during the entire school year from the age of 6 to the child's eighteenth birthday." MCL 380.1561(1). The code also considers a child "aged 7 to his or her . . . eighteenth birthday" who meets certain criteria to be "a juvenile disorderly person." MCL 380.1596(2). Juvenile disorderly persons may be assigned to an ungraded school. MCL 380.1596(1). Thus, for the purposes of determining eligibility for placement in alternative schooling, the Legislature arguably appears to have opted to use the birthday rule. However, as noted above, the specific language of this statute differs from language used in the Probate Code and the Juvenile Facilities Act. A "juvenile disorderly person" under this section is thus not necessarily a "juvenile" for the purposes of other

---

[18] The Michigan Vehicle Code also provides a definition of "birthday" that means "any anniversary of the original date of birth . . . ." MCL 257.4a. However, the definition also deems persons born during a leap year on February 29 to have been born on March 1 "for the purposes of this act . . . ." It thus appears that this definition is meant to be applied to the Michigan Vehicle Code, rather than generally.

statutes, and may be ineligible to be considered as such, if he or she is over 17 years of age but has not attained his or her 18th birthday.

As noted, "[t]he Legislature has the authority to abrogate the common law." *Hoertsman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74; 711 NW2d 340 (2006). However, "[w]hen it does so, it should speak in no uncertain terms." *Id*. Language used by the Legislature should show a clear intent to abrogate the common law. *Id*. at 74-75. Common-law principles are not to be abolished by implication. *People v Williams*, 288 Mich App 67, 81; 792 NW2d 384 (2010), aff'd 491 Mich 164 (2012).

We are unable to discern from these statutes an intent by the Michigan Legislature to explicitly abrogate the common-law rule of age calculation. The situation before us is therefore unlike that presented in *In re Harris* (which applied the "birthday" rule on the basis of the California Legislature's explicit abrogation of the common-law rule in favor of the "birthday" rule). This raises the further question, however, regarding whether the common-law rule of age calculation had previously been abrogated by the courts, so that explicit legislative abrogation was unnecessary. We thus next turn to a discussion of the relevant Michigan caselaw.

### 6. MICHIGAN CASELAW

Notwithstanding our presumption that the common-law rule of age calculation carried over from England to be "in force" in Michigan at the time of the adoption of Michigan's first Constitution in 1835, we have not found a single case in Michigan that ever applied that common-law rule, either before or after the adoption of the 1963 Michigan Constitution. Nor have the parties directed us to any such case. Nor, as noted, did the Michigan Attorney General cite any Michigan case in rendering opinions in

1929 and 1956. This fact alone gives us pause in presuming that the common-law rule of age calculation was "in force" in Michigan in 1963, or that, by virtue of Article 3, § 7 of the 1963 Michigan Constitution, it thereafter "remain[ed] in force . . . ." That said, we also have found no case in Michigan, nor have the parties directed us to any, that directly considered the alternatives of applying the common-law rule of age calculation or the birthday rule, and that opted for either.

We have, however, located Michigan caselaw that we find pertinent to our consideration of the issue, and that thus informs our analysis.[19] For example, in *Bay Trust Co v Agricultural Life Ins Co*, 279 Mich 248, 249, 252; 271 NW 749 (1937), our Supreme Court interpreted an insurance policy provision that by its terms did not cover any person " 'over the age of 60 years.' " The Court unanimously held that an insured who had attained the age of 60 but who had not reached the age of 61 was nonetheless "over the age of 60 years." *Id.* at 253. The Court stated that "[t]he insured was born November 28, 1875; he had finished the entire span of 60 calendar years on November 28, 1935, when he came to his death February 8, 1936, 2 months and 10 days later. It must necessarily follow that upon the last-mentioned date he was over the age of 60 years." *Id.* The Court therefore concluded that the insured was not covered by the policy and reversed the trial court's judgment in favor of the plaintiff.[20]

---

[19] We note that all of the cited cases postdate the amendment of the Michigan Constitution in 1908, so that at the time of those decisions there was no longer any arguable constitutional prohibition on the amendment of the common law by the judiciary. See our discussion earlier in this opinion.

[20] The Court in *Bay Trust* found persuasive the earlier holding of our Supreme Court in *Jackson v Mason*, 145 Mich 338, 339-340; 108 NW 697 (1906), which interpreted a penal statute requiring parents to send to

It is certainly true that, in *Bay Trust*, the precise date at which the insured turned 60 years of age was not at issue, because it was undisputed that he died 2 months and 10 days after his 60th birthday. Thus, the Court was not specifically tasked with determining whether the common-law rule or the birthday rule applied in Michigan. Moreover, the Court's statement suggesting that the insured attained the age of 60 on his 60th birthday was not necessary to its adjudication and was therefore obiter dictum. See *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 597-598; 374 NW2d 905 (1985). Nonetheless, we find the unanimous statement of our Supreme Court in *Bay Trust* to be of persuasive value, *People v Higuera*, 244 Mich App 429, 437; 625 NW2d 444 (2001), inasmuch as it demonstrates the mindset of our Supreme Court, at least as early as 1937, in following popular usage to speak of "finish[ing] the entire span of 60 calendar years," and therefore attaining that age, on one's birthday. *Bay Trust*, 279 Mich at 253. Whether or not it intended to do so in a precedential fashion, our Supreme Court thus stated and seemingly endorsed the birthday rule of age calculation. It is therefore arguable, under the *Bay Trust* decision of 1937, that the common-law rule of age calculation was no longer in force at the time of the adoption of the current Michigan Constitution in 1963.

Subsequently, in *Evans v Ross*, 309 Mich 149; 14 NW2d 815 (1944), our Supreme Court considered a husband's complaint seeking to have his marriage declared void. By statute, a female was " 'capable in law of contracting marriage' " if she " 'shall have attained the full age of sixteen years . . . .' " *Id.* at 151 (citation

---

public schools children " 'between and including the ages of seven and fifteen years' " and held that the statute did not encompass a child who was 15 years and 3 months old. The precise issue before us was therefore also not presented in *Jackson*.

omitted). The defendant wife was 15 years of age at the time of marriage. The Court thus considered the effect of a further statutory provision that provided that " 'a marriage solemnized when either of the parties was under the age of legal consent' " was void " 'if they shall separate during such nonage, and not cohabit together afterwards . . . .' " *Id.* (citation omitted). In assessing the circumstances insofar as they related to this statute, the Court stated that "[t]he parties separated *prior to her 16th birthday* and have not cohabited together since." *Id.* at 150 (emphasis added). Accordingly, the Court held that if the lower court determined that the defendant wife was under the age of consent at the time of the marriage ceremony, the marriage was void. *Id.* at 153.

Again, the precise issue that is before us was not presented in *Evans*. However, *Evans* again reflects that our Supreme Court, in equating "during such nonage" with "prior to her 16th birthday," considered the defendant's birthday as the critical date on which her age changed, and on which she attained the age of consent. *Evans* thus further calls into question whether the common-law rule of age calculation was in force in Michigan as of at least 1944.

Further, in *O'Neill v Morse*, 385 Mich 130; 188 NW2d 785 (1971), our Supreme Court reversed the dismissal of a wrongful death action where the decedent was an unborn child. In doing so, the Court commented as follows on the subject of age calculation: "The phenomenon of birth is an arbitrary point from which to measure life. True, *we reckon age by counting birthdays*. The Chinese count from New Years. The choice is arbitrary." *Id.* at 136 (emphasis added). Once again, we note that the precise issue before us was not presented in *O'Neill*. Nonetheless, that decision again reflects the mindset of our Supreme Court in deeming age to

change as of one's birthday. Also noteworthy is the fact that among the justices concurring in the *O'Neill* opinion was then Chief Justice THOMAS M. KAVANAGH, who as Attorney General had formerly authored the above-referenced Attorney General opinion in 1956 (thereby suggesting that his view of the applicable rule of age calculation arguably may have changed by the time of the *O'Neill* decision in 1971).

More recently, the Supreme Court arguably applied the birthday rule for purposes of the Age of Majority Act, MCL 722.51 *et seq.*, and the child support statute, MCL 552.17a. In *Smith v Smith*, 433 Mich 606, 609-611; 447 NW2d 715 (1989) (opinion by RILEY, C.J.), the Supreme Court addressed whether amendment of the age of majority, to 18 years of age from 21 years of age, rendered null and void the child support act's exceptional-circumstances provision, which authorized support payments beyond the child support act's prescribed age of 18 until the age of majority. Discussing the preamendment interplay of the statutes, the Court opined:

> Thus, absent exceptional circumstances, § 17a statutorily limited support payments *up to* the time of a child's *eighteenth birthday*, three years before the age of majority. It was this Court in *Johnson* [*v Johnson*, 346 Mich 418; 78 NW2d 216 (1956)], that interpreted the exceptional-circumstances clause to allow support payments beyond a child's *eighteenth birthday*, but not beyond the age of majority.

> \* \* \*

> . . . [B]ecause the court's jurisdiction in a divorce proceeding is defined by statute, the court rule cannot expand jurisdiction to authorize child support *beyond a child's eighteenth birthday*.

> \* \* \*

> Though the courts have never dissented from the rule
> that the age of majority limits the duration of child-support
> payments, this saving clause has been used, when appli-
> cable, to provide for support *up to* a child's *twenty-first
> birthday*. [*Id.* at 612-613, 620, 624 (opinion by RILEY, C.J.)
> (emphasis added).]

The Court ultimately held that because of the amend-
ment of the age of majority to 18 years of age, the
exceptional-circumstances provision of the child sup-
port act was "legally void" and, thus, a court could not
"authorize child support beyond a child's *eighteenth
birthday*." *Id.* at 618-620 (emphasis added).[21]

Still more recently, in *People v Chapman*, 485 Mich
859 (2009), the Supreme Court again appeared to apply
the birthday rule in the context of the criminal sexual
conduct statute. The defendant had been convicted of
third-degree criminal sexual conduct for engaging in
"sexual penetration with a victim who 'is at least 13
years of age and under 16 years of age.' " *Id.*, quoting
MCL 750.520d(1)(a). In reversing the defendant's con-
victions of third-degree criminal sexual conduct, the
Court explained that "[t]he evidence established that
the defendant engaged in sexual penetration with the
victim on several occasions between September 2005
and June 2006, but did not establish that these acts
occurred *prior to* the victim's *sixteenth birthday* in
February 2006." *Id.* (emphasis added).

In considering these cases, we take note of the
long-standing debate over whether and when it is
appropriate for the judiciary to alter the common law,
and whether and when the courts should defer to the

---

[21] The Legislature subsequently adopted legislation providing for post-
majority support, effectively superseding the holding in *Smith*. See
*Rowley v Garvin*, 221 Mich App 699, 706; 562 NW2d 262 (1997).
Currently, MCL 552.16 and MCL 552.605b provide for such support.

Legislature in this area of shared authority. See, e.g., *Woodman*, 486 Mich at 257-258 (opinion by YOUNG, J.). And in that regard, we appreciate the fact that, just as "legislative amendment of the common law is not lightly presumed," *Wold Architects & Engineers v Strat*, 474 Mich 223, 233; 713 NW2d 750 (2006), so too the Supreme Court does not "lightly exercise its authority to change the common law." *Woodman*, 486 Mich at 245 (opinion by YOUNG, J.). The Supreme Court has articulated that the reason it should act with "utmost caution" in exercising its authority to modify the common law is that "it is difficult for the judiciary to assess the competing interests that may be at stake and the societal trade-offs relevant to one modification of the common law versus another in relation to the existing rule." *Id.* at 231 (opinion by YOUNG, J.). Further, in evaluating whether to "alter a common law doctrine that has existed undisturbed for well over a century," the Supreme Court should " 'exercise caution and . . . defer to the Legislature when called upon to make a new and potentially societally dislocating change to the common law.' " *Id.* at 245 (opinion by YOUNG, J.), quoting *Henry v Dow Chem Co*, 473 Mich 63, 89; 701 NW2d 684 (2005) (declining to recognize a cause of action for medical monitoring, describing it as a "radical change in our negligence jurisprudence"). The Court in *Henry* further described that "separation of powers considerations may operate as a *prudential* bar to judicial policy-making in the common-law arena. This is so when we are asked to modify the common law in a way that may lead to dramatic reallocation of societal benefits and burdens." *Henry*, 473 Mich at 89 (emphasis in original).

The question before us is not, however, whether the judiciary *should* exercise its authority to change the common law, but rather whether our Supreme Court

has already effectively done so. In that regard, we note that it is far from clear that a recognition of the applicability of the birthday rule of age calculation in Michigan would effect a "radical change" in the law, or a "new and potentially societally dislocating change to the common law," or that it would "lead to dramatic reallocation of societal benefits and burdens." To the contrary, it seems to us, given all the factors discussed in this opinion, that those consequences more likely would flow from a recognition of the applicability of the common-law rule of age calculation, where age would be deemed to change on the first moment of the day *before* one's birthday.

### F. THE BIRTHDAY RULE APPLIES IN MICHIGAN

After evaluating all of the above factors, we conclude that the birthday rule of age calculation applies in Michigan. Again, we acknowledge that none of the cited authorities alone answers the question decisively. Nonetheless, a number of considerations, taken together, persuade us to apply the birthday rule and to conclude that the common-law rule of age calculation does not apply in Michigan. First and foremost, as noted, we have found no case in Michigan ever applying the common-law rule of age calculation. Given that fact, we are hard-pressed to conclude that what once was an established rule in England was ever established in Michigan. While it may be that the rule is presumed to have carried over upon the adoption of Michigan's first Constitution in 1835, it nonetheless was never applied in this state. Consequently, while the common-law rule may have reflected the "custom of the realm" from which Sir William Blackstone hailed, it never became the custom of the realm that is the state of Michigan.

To the contrary, the Michigan Supreme Court, to the extent that it has addressed the issue even in passing, has commonly and routinely used language consistent with the birthday rule and contrary to the common-law rule. It has confirmed its earlier enunciations consistent with the birthday rule by a court rule that, while procedural rather than substantive, specifically defines a "juvenile" according to one's "birthday." MCR 6.903(E). In our view, the Supreme Court thus confirmed its understanding of what the Legislature intended in the statutes to which the court rule conformed, and of what prior courts had proclaimed as a matter of substantive law. Similarly, the Legislature, while not explicitly abrogating the common-law rule (which it may have felt was unnecessary given the language of the caselaw), has at times used language consistent with the birthday rule. The only authority in Michigan supportive of applying the common-law rule are two Attorney General opinions that lack persuasive value, for the reasons already indicated.

For these reasons, we hold that the common-law rule of age calculation, to the extent that it was ever applicable in Michigan, was long ago abrogated by decisions of the Michigan Supreme Court and the Michigan Legislature's subsequent statutory enactments must be interpreted with that judicial abrogation in mind. Further, given all the above-discussed factors, we believe that the Michigan Supreme Court, if called upon to decide the issue today, would confirm the applicability of the birthday rule of age calculation in Michigan.

Having reached this conclusion, we nonetheless would prefer a more express articulation of public policy from our Legislature or the Supreme Court than what

we have currently. Consequently, we would encourage the Legislature and the Supreme Court to clearly articulate the public policy of the state of Michigan regarding age calculation by specific legislation and definitive ruling.[22]

## V. CONCLUSION

For the reasons noted, we find no due process or other errors relative to defendant's convictions. We conclude, however, that resentencing is required. Defendant admits that he was born on January 29, 1989. Defendant shot and killed Little on the evening of January 28, 2007. Under the birthday rule of age calculation, which we conclude applies, he was not yet 18 years of age when the shooting occurred. *Miller* makes it clear that violation of the prohibition against cruel and unusual punishment occurs when individuals "*under* the age of 18 *at the time of their crimes*" are sentenced to mandatory life without the possibility of parole. *Miller*, 567 US at ___; 132 S Ct at 2460; 183 L Ed 2d at 414-415 (emphasis added). Defendant was under the age of 18 at the time he shot and killed Little. We therefore hold that *Miller* applies to this case and that resentencing is required.[23]

---

[22] We will not endeavor to address the various facets of the issue that might be considered. The precise issue before us in this case may, however, only be one. Others may include, for example, whether "fractions of a day" should be considered, whether one is "over" an age before reaching one's next birthday, and whether any difference exists between one who has "attained" the age in question versus one who is "not less than" the age in question, or other formulations of this concept.

[23] We express no opinion regarding the effect on remand in this case of the *Miller* factors, although we note from the record the approximately one- to two-hour differential from the time of the crime to the time of defendant's attaining the age of 18.

We affirm defendant's convictions and remand for resentencing in accordance with *Miller*. We do not retain jurisdiction.

DONOFRIO and BECKERING, JJ., concurred with BOONSTRA, P.J.