*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ALFIE MAURICE PARKER,

Defendant-Appellant.

UNPUBLISHED
April 11, 2019

No. 339055
Macomb Circuit Court
LC No. 2016-000851-FC

Before: LETICA, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of assault with intent to murder (AWIM), MCL 750.83, armed robbery, MCL 750.529, carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and felon in possession of a firearm (felon-in-possession), MCL 750.224f. The trial court sentenced defendant as a habitual offender, third offense, MCL 769.11, to concurrent prison terms of 30 to 50 years for the AWIM and armed robbery convictions and 90 to 120 months for the felon-in-possession conviction, to be served consecutive to the statutory prison term of 2 years for the felony-firearm conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of the shooting of Erwin Johnson on January 30, 2016. On the night of the shooting, Johnson went to a home to purchase marijuana. Johnson frequently purchased marijuana at that location either from defendant, whom Johnson knew as "Reece," or from another man known only as "E." After purchasing the marijuana, Johnson and E decided to have a drink together. They walked to a convenience store to purchase a bottle of liquor, and then returned to the home, where defendant and numerous other people were present throughout the evening. After consuming the liquor, defendant, Johnson, and another man whom Johnson did not know decided to purchase another bottle of liquor. Johnson testified that, as they again started to walk to the convenience store, defendant pulled out a gun, demanded Johnson's money, and then shot him five times.

At trial, Clinton Township Police Officer John Kuehn testified that, upon arriving at the scene, he asked Johnson who had shot him. Johnson was in pain and kept repeating only that he had been shot. Johnson eventually stated that the shooter was a black male. Johnson was transported to McLaren Hospital. After Johnson had been stabilized, approximately 40 minutes after arriving at the hospital, Officer Kuehn spoke to him again. This time, Johnson told Officer Kuehn that "Reece" had shot him. At trial, Dr. Evan Coyne testified that he treated Johnson at McLaren Hospital on the night of the shooting. According to Dr. Coyne's notes, Johnson "indicated that he was robbed and shot by an unknown person." Johnson was later transferred to Royal Oak Beaumont Hospital, where Clinton Township Police Detective Brian Gilbert and Clinton Township Police Lieutenant Dina Caringi met with him on February 2, 2016. The officers showed Johnson a single photograph of defendant, and he identified the man in the photograph as Reece, the man who had shot him.

At defendant's preliminary examination, Johnson made an in-court identification of defendant, and defendant was bound over for trial. Defendant then filed a motion to quash Johnson's in-court identification, arguing that the pretrial identification procedure had been impermissibly suggestive. The trial court granted defendant a *Wade*[1] hearing to determine whether the identification procedure used by Detective Gilbert and Lieutenant Caringi had been impermissibly suggestive or whether there was an independent basis for the admission of Johnson's in-court identification of defendant.

At the *Wade* hearing, Johnson recounted the events of the shooting, and further testified that he had known defendant for approximately one year, during which time he had purchased marijuana from defendant almost daily. Johnson also testified that he had identified defendant as the shooter to a police officer while at the scene. Officer Kuehn testified that Johnson had first identified the shooter as a black male while at the scene, but that he had later identified defendant as the shooter while at McLaren Hospital.[2] Defense counsel argued that Johnson's pretrial identification of defendant had been tainted by an impermissibly suggestive identification procedure, i.e., Officer Kuehn showing Johnson a single photograph of defendant. Defense counsel also argued that Johnson had provided inconsistent descriptions of the shooter, having initially identified him only as a black male, and that there was therefore no independent basis on which to allow Johnson's in-court identification. The trial court held that the identification procedure used was not impermissibly suggestive, and further held that, due to the prior relationship between defendant and Johnson, there was an independent basis on which to allow Johnson's in-court identification. The case proceeded to trial and defendant was convicted as described.

Following his convictions, defendant filed a motion with the trial court for a new trial or an evidentiary hearing. Defendant asserted that, after the verdict was rendered, the jury foreperson had indicated to the trial judge that she had been aware of a Macomb Daily newspaper article regarding the case, and defendant sought a determination of whether the jury

---

[1] *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

[2] Dr. Coyne was not called to testify at the *Wade* hearing.

had been influenced by the information contained in the article. The trial court denied defendant's motion, holding that defendant had presented no evidence concerning what specific article the jury foreperson had referenced. Further, the trial court noted that there was no evidence presented that the jury foreperson actually had read the Macomb Daily article or had considered the article during deliberations.

This appeal followed. After filing his claim of appeal, defendant filed a motion to remand with this Court, requesting a *Ginther*[3] hearing concerning the effectiveness of his trial counsel, and regarding the possible media influence of the jury. This Court denied defendant's motion.[4]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was deprived of his constitutional right to the effective assistance of counsel because trial counsel failed to investigate, locate, and call Dr. Coyne to testify at the *Wade* hearing regarding Johnson's identification of the shooter as an "unknown person." We disagree.

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Because this Court denied defendant's request for a *Ginther* hearing, our review is limited to mistakes apparent on the record. *People v Lopez*, 305 Mich App 686, 694; 854 NW2d 205 (2014).

In order to prevail on a claim of ineffective assistance of counsel, a defendant has the burden of establishing that (1) counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. *Trakhtenberg*, 493 Mich at 51. "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (citation omitted).

Trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v Washington*, 466 US 668, 691; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Moreover, trial counsel's failure to undertake a reasonable investigation may constitute ineffective assistance of counsel. *Trakhtenberg*, 493 Mich at 51-55. However, "decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which we will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 311-312; 688 NW2d 308 (2004). "This presumption can only be overcome by a showing of counsel's failure to perform

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[4] See *People v Parker*, unpublished order of the Court of Appeals, entered June 20, 2018 (Docket No. 339055).

an essential duty, which failure was prejudicial to the defendant." *People v Hampton*, 176 Mich App 383, 385; 439 NW2d 365 (1989). "Furthermore, the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *Dixon*, 263 Mich App at 312.

Defendant argues that trial counsel was ineffective for failing to investigate, locate, and call Dr. Coyne to testify at the *Wade* hearing because, if Dr. Coyne had testified, the trial court would have realized that Johnson had provided three different identifications of the shooter, and it therefore would have found that an independent basis did not exist for the admission of Johnson's in-court identification of defendant. We disagree.

At trial, Dr. Coyne testified that he had treated Johnson upon his arrival at McLaren Hospital on the night of the shooting. Dr. Coyne did not have a clear memory of speaking with Johnson at that time, but according to his notes, Johnson had stated that an unknown person had shot him. Because Dr. Coyne provided this testimony at trial, it is likely that he would have provided the same testimony had he been called to testify at the *Wade* hearing.[5] Because defendant's defense was predicated on Johnson having misidentified him as the shooter, and because defendant was attempting to exclude Johnson's in-court identification of defendant by establishing that Johnson had provided different identifications of the shooter, this testimony possibly could have strengthened defendant's argument. Nonetheless, and while recognizing that counsel's choice of whom to call to testify is presumed to be trial strategy, *Dixon*, 263 Mich App at 311-312, even were we to assume that defense counsel's failure to investigate, locate, and call Dr. Coyne to testify at the *Wade* hearing was unreasonable, defendant has not shown that the failure was outcome determinative.

Defendant bears the burden of establishing that, but for trial counsel's failure to call Dr. Coyne to testify at the *Wade* hearing, the trial court would have suppressed Johnson's in-court identification of defendant. *Trakhtenberg*, 493 Mich at 51. In order to suppress Johnson's in-court identification, the trial court would have had to have found both that the pretrial identification procedure that was used was impermissibly suggestive and that there was no independent basis on which to admit Johnson's in-court identification. *People v Kurylczyk*, 443 Mich 289, 303-303; 505 NW2d 528 (1993).

"A photographic identification procedure violates a defendant's right to due process when it is so impermissibly suggestive that it creates a substantial likelihood of misidentification." *People v Woolfolk*, 304 Mich App 450, 457; 848 NW2d 169 (2014). "Showing a witness a single photograph is considered to be one of the most suggestive photographic identification procedures." *Id*. This Court has stated that "when the witness is shown only one person or a group in which one person is singled out in some way, he is tempted to presume that he is the person." *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998) (citation and quotation marks omitted). However, whether a photographic identification violates

---

[5] Indeed, defendant argues that "[h]ad Dr. Coyne been located and called to the *Wade* hearing, Dr. Coyne would have testified as he did at trial."

due process depends on the totality of the circumstances. *Woolfolk*, 304 Mich App at 457. Even if a court determines that the pretrial procedure was unduly suggestive, "in-court identification by the same witness still may be allowed if an independent basis for in-court identification can be established that is untainted by the suggestive pretrial procedure." *Kurylczyk*, 443 Mich at 303. Our Supreme Court has listed eight factors to use in determining whether an independent basis exists:

> 1. Prior relationship with or knowledge of the defendant.
>
> 2. The opportunity to observe the offense. This includes such factors as length of time of the observation, lighting, noise or other factor[s] affecting sensory perception and proximity to the alleged criminal act.
>
> 3. Length of time between the offense and the disputed identification. . . .
>
> 4. Accuracy or discrepancies in the pre-lineup or showup description and defendant's actual description.
>
> 5. Any previous proper identification or failure to identify the defendant.
>
> 6. Any identification prior to lineup or showup of another person as defendant.
>
> 7. . . .[T]he nature of the alleged offense and the physical and psychological state of the victim. . . .
>
> \* \* \*
>
> 8. Any idiosyncratic or special features of defendant. [*Gray*, 457 Mich at 116, quoting *Kachar*, 400 Mich at 95-96.]

Defendant chiefly argues that Dr. Coyne's testimony would have led the trial court to conclude that there was no independent basis to admit Johnson's in-court identification. We disagree. To the contrary, we conclude that defendant has failed to establish that, if Dr. Coyne had testified at the *Wade* hearing, there was a reasonable probability that the trial court would have found an independent basis to be lacking. *Trakhtenberg*, 493 Mich at 51.

At the *Wade* hearing, the trial court was presented with evidence that Johnson had initially failed to identify the shooter, and that he instead had initially identified the shooter only as a black male before identifying him by name sometime later. Defendant's counsel argued that, because Johnson had identified the shooter only as a black male before naming defendant as the shooter, the *Kachar* factors weighed in favor of defendant and, therefore, there was no independent basis on which to admit the in-court identification. Moreover, counsel stressed the fact that defendant had been under the influence of alcohol when he was shot, and that he therefore was unable to properly identify who had shot him. The trial court nonetheless concluded that there was an independent basis for the admission of Johnson's in-court identification, stating that Johnson's prior relationship with defendant was overwhelming and heavily weighed in favor of the prosecution. The trial court noted that Johnson had met with defendant on a regular basis, up to seven days a week, over the course of year, and during those

-5-

meetings, Johnson and defendant were only an arm's length away from each other. Moreover, the trial court found that, although the other factors of the *Kachar* test could be disputed, the first three factors overwhelmingly supported a finding that the in-court identification should not be suppressed, due to the prior relationship of the parties. We therefore reject defendant's suggestion that that if the trial court had been aware that Johnson had also told Dr. Coyne that an unknown person had shot him, factors three through seven of the *Kachar* test would have weighed so heavily in favor of defendant that the trial court would have suppressed the in-court identification.

The trial court's reliance on Johnson's prior relationship with defendant was independent of any conflicting statements Johnson had given regarding the identification of the shooter right after being shot. Therefore, even if Dr. Coyne had testified at the *Wade* hearing, defendant has not shown a reasonable probability that trial court's independent-basis determination would have been different.

In addition, the trial court alternatively found that the pretrial identification procedure was not impermissibly suggestive, which alone was sufficient reason to deny defendant's motion to quash. Although the trial court did not state on the record its reasoning as to why the pretrial identification procedure was not impermissibly suggestive, this Court in *Woolfolk* considered whether it was impermissibly suggestive to show a single photograph of the defendant to a witness who had previously identified the defendant as the shooter. *Woolfolk*, 304 Mich App at 457. This Court held that "the use of a single photograph did not create a substantial likelihood of misidentification" because "the photograph was used only to help confirm the identity of the person the witness had already identified—using a nickname—as the shooter." *Woolfolk*, 304 Mich App at 457. This Court also noted that the witness knew the defendant and had grown up with him. *Woolfolk*, 304 Mich App at 457.

In this case, police officers presented Johnson with a single photograph of defendant approximately two days after the shooting, while Johnson was recovering at the hospital. Similar to *Woolfolk*, Johnson had previously identified the shooter by the nickname "Reece" on the night of the shooting, before being shown the photograph. Johnson testified at the *Wade* hearing that he had known defendant for approximately one year and had interacted with him frequently throughout that year. Johnson saw and interacted with defendant two to three times a week, and sometimes as much as every day of the week, in order to buy marijuana from him. Based on these facts, the trial court could properly conclude in this case that the use of a single photograph did not create a substantial likelihood of misidentification and was not impermissibly suggestive. *Woolfolk*, 304 Mich App at 457.

Therefore, even though the trial court found an independent basis to admit the in-court identification, defendant's motion to suppress the in-court identification could have been independently denied because the trial court found that the single photographic identification procedure was not impermissibly suggestive. Even if Dr. Coyne's testimony would have altered the trial court's independent-basis analysis, defendant has failed to establish that, but for trial counsel's failure to call Dr. Coyne, there is a reasonable probability that the trial court's decision on his motion quash would have been different.

Accordingly, defendant has failed to establish that he was denied the effective assistance of counsel.

## III. ALLEGATION OF JUROR MISCONDUCT

Defendant also argues that the trial court erred by denying him a new trial, or at least an evidentiary hearing, because the jury foreperson indicated that she had been aware of a news article concerning this case. We disagree.

We review for an abuse of discretion the trial court's decision to deny a motion for a new trial. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008). A trial court's denial of a motion based on juror misconduct is an abuse of discretion "only where the misconduct was such that it affected the impartiality of the jury or disqualified its members from exercising the powers of reason and judgment." *People v Messenger*, 221 Mich App 171, 175; 561 NW2d 463 (1997). "A trial court's decision to hold an evidentiary hearing is generally reviewed for an abuse of discretion." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017). "The facts supporting the grant or denial of an evidentiary hearing are reviewed for clear error, and the application of the law to those facts is reviewed de novo." *Id*. A trial court abuses its discretion when its decision "falls outside the range of reasonable and principled outcomes." *Id*.

Defendants have a right to a fair and impartial jury. *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). "During their deliberations, jurors may only consider the evidence that is presented to them in open court." *Id*. However, "it is well established that not every instance of misconduct in a juror will require a new trial." *People v Fetterley*, 229 Mich App 511, 544; 583 NW2d 199 (1998). "A new trial will not be granted for misconduct of the jury if no substantial harm was done thereby to the party seeking a new trial, even though the misconduct is such as to merit rebuke from the trial court if brought to its notice." *Id*. at 545.

"Where the jury considers extraneous facts not introduced in evidence, this deprives a defendant of his rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment." *Id*. In order to establish that the extraneous evidence was error requiring reversal, (1) "the defendant must prove that the jury was exposed to extraneous influences," and (2) "the defendant must establish that these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict." *Id*. at 88-89. Generally, to prove the second element, "the defendant will demonstrate that the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict." *Id*. at 89. In *Budzyn*, our Supreme Court also set forth the following factors that may be considered in determining whether the extrinsic evidence created a real and substantial possibility of prejudice:

> (1) whether the material was actually received, and if so how; (2) the length of time it was available to the jury; (3) the extent to which the juror discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so at what point in the deliberations; and (5) any other matters which may bear on the issue of the reasonable possibility of whether the extrinsic material affected the verdict. [*Budzyn*, 456 Mich at 89 n 11 (citation omitted).]

"If the defendant establishes this initial burden, the burden shifts to the people to demonstrate that the error was harmless beyond a reasonable doubt." *Id*. at 89.

In *People v Grove*, 455 Mich 439, 471; 566 NW2d 547 (1997), superseded by statute on other grounds as stated in *People v Franklin*, 491 Mich 916 (2012), our Supreme Court stated the following regarding whether a juror's exposure to information in a newspaper article prejudiced a defendant:

> [w]hether or not prejudice warranting a new trial results from the reading by the jurors of news articles or seeing or hearing broadcasts must turn on the special facts of each case, and the question is left largely to the determination and discretion of the trial court. [*Id*. at 472.]

The Supreme Court stated that "due process does not require a new trial every time a juror has been placed in a potentially compromising situation," and furthermore, "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Id*. at 472 (citation and quotation marks omitted).

Here, defendant argues, as he did in the trial court, that he is entitled to a new trial or an evidentiary hearing because the jury foreperson may have been exposed to a news article posted online in the Macomb Daily during the time that the jury was deliberating. Defendant's claim is based solely on his assertion that, after the trial concluded, the jury foreperson stated that she was aware that the case had been "in the news." Defendant has failed to provide any proof that the jury foreperson was actually exposed to any specific extraneous information. Defendant posited that the jury foreperson's remark must have related to a specific news article posted online by the Macomb Daily newspaper, but there is no evidence in the record to support that assertion. Moreover, even if true, and looking to the factors set forth in *Budzyn*, defendant has failed to establish that the jury foreperson or any of the other jurors actually read the article or were aware of its contents. There is no evidence that the jurors discussed the article during deliberations or that the jury foreperson considered it in rendering a verdict. Moreover, the trial court instructed the jurors to decide the case based only on the evidence admitted during trial, and jurors are presumed to follow the trial court's instructions. *Petri*, 279 Mich App at 414. Therefore, because there is no evidence that the jury was actually exposed to extraneous information, there is no basis to find that it affected the impartiality of the jurors or prevented the jurors from exercising their powers of reason and judgment; nor did the jury foreperson's vague, isolated, and post-verdict statement require the trial court to grant an evidentiary hearing to investigate the matter further. *Fetterley*, 229 Mich App at 544. The trial court did not abuse its discretion by denying defendant's motion for a new trial or an evidentiary hearing. *Miller*, 482 Mich at 544; *Franklin*, 500 Mich at 100.

Defendant argues, in the alternative, that his counsel was ineffective for failing to question the jury foreperson in order to investigate whether the news article had impacted her verdict. We disagree. Again, this Court's review is limited to the mistakes apparent on the record. *Lopez*, 305 Mich App at 693.

At noted previously, there is a "strong presumption that counsel's performance was born out of sound trial strategy." *Trakhtenberg*, 493 Mich at 52. "This presumption can only be

overcome by a showing of counsel's failure to perform an essential duty, which failure was prejudicial to the defendant." *Hampton*, 176 Mich App at 385. However, "trial counsel cannot be faulted for failing to raise an objection or motion that would have been futile." *People v Fonville*, 291 Mich App 363, 384; 804 NW2d 878 (2011) (citation omitted).

Defendant has provided no evidence to support a finding that his counsel's performance fell below an objective standard of reasonableness. The record does not contain the actual comment from the jury foreperson. At the hearing on defendant's motion for a new trial, defendant's counsel testified that he did not raise the issue immediately upon learning of possible juror misconduct, because he wanted to first look at what had been written in the media, determine whether it was prejudicial, and research the law. Defendant's counsel subsequently filed a motion for a new trial or evidentiary hearing based on this alleged juror misconduct. There is no evidence in the record to support a finding that defendant's counsel's representation, in opting not to question the juror immediately after the trial concluded, but to instead first familiarize himself with the factual basis and relevant law, was objectively unreasonable and not "born out of sound trial strategy." *Trakhtenberg*, 493 Mich at 52. Nor is there any evidence to support a finding that, but for counsel's failure to immediately question the foreperson, there is a reasonable probability that the outcome in this case would have been different. As stated earlier in this opinion, defendant does not present evidence that any juror was actually exposed to the content of the news article or that it impacted any juror's ability to render an impartial verdict. Therefore, defendant has failed to establish that he was denied his right to effective assistance of counsel. *Id*.

Affirmed.


/s/ Anica Letica
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra