*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
March 21, 2024

v

OMAR ALEXANDER-ROMAN CONEY,

Defendant-Appellant.

No. 361559
Oakland Circuit Court
LC No. 2020-274923-FC

Before: CAVANAGH, P.J., and JANSEN and MALDONADO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to commit murder (AWICM), MCL 750.83; four counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; first-degree home invasion, MCL 750.110a(2); felon in possession of a firearm (felon-in-possession),[1] MCL 750.224f; and carrying a concealed weapon, MCL 750.227. Defendant was sentenced to 25 to 80 years' imprisonment for AWICM, 10 years' imprisonment for each felony-firearm conviction, 25 to 80 years' imprisonment for first-degree home invasion, 2 to 20 years' imprisonment for felon-in-possession, and 2 to 20 years' imprisonment for carrying a concealed weapon, all to run concurrently. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

On June 17, 2020, defendant and Demetrius Sanders went to the house of the victim, Tony Yasso, and approached the victim while wearing masks and pointing their guns at him. The victim had approximately $10,000 on his person from two local pizza places he owned and operated. Defendant shot at the victim and the victim returned fire toward both men. Sanders was shot in the head and killed. Defendant and the victim both sustained bullet wounds before the victim

---

[1] The trial court vacated defendant's conviction of felon-in-possession in response to defendant's postjudgment motion because the jury foreperson did not read a verdict for that count, and when polled, the jurors affirmed their verdict was consistent with what the jury foreperson read.

retreated into his house and defendant drove away in a dark Dodge Charger. Shortly thereafter, local police officers received 911 calls about gunfire in the area, and one neighbor reported seeing a dark Dodge Charger leave the area. Subsequently, the local police stopped defendant, ordered him out of the Charger, noticed his bullet wounds, and sent him to the hospital. Defendant's blood was identified in three different areas on the victim's driveway.

The officers found a gun underneath the driver seat in the Charger that was later identified as the gun from which five spent shell casings found on the victim's driveway originated. Sergeant Larry Hernandez ("Sergeant L. Hernandez"), of the Farmington Hills Police Department, was asked during trial to identify the driver of the Charger. Sergeant L. Hernandez indicated it was the man holding a piece of paper at the defense table, but the record did not reflect who he identified. However, Officer Jason Deeulis, of the West Bloomfield Police Department, clearly identified defendant as the driver of the Charger.

The officers also found a piece of paper in the Charger with the victim's address on it. The paper originated from Detroit Chassis, a company where both defendant and Sanders worked. Sanders's cell phone and wallet were found inside the Charger, along with defendant's cell phone. The day following the shooting, the victim went to a police station. An officer showed him two photographs, one of Sanders and one of defendant, and asked if the victim knew either man. The victim stated he did not, but that he recognized defendant as one of the men from the shooting by his glasses. Following testimony presented at trial about this event, the victim performed an in-court identification declaring defendant was one of the two assailants. The victim stated he recognized defendant from his glasses and the mugshot picture the victim was shown at the police station.

Defendant testified that he drove Sanders to the victim's house, but remained in the Charger until he noticed the conversation between the victim and Sanders was growing tense. At that point, defendant grabbed a gun from the Charger and joined Sanders. Subsequently, the victim began shooting at Sanders and defendant, and defendant returned fire. After the victim shot defendant, defendant got into the Charger and left.

After trial, defendant moved for a new trial or a hearing under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), claiming, in relevant part, that he was denied the effective assistance of counsel because the attorney his family hired, William Mitchell, did not conduct the trial, instead allowing Sharon Woodside, defendant's appointed attorney, to take the lead in his defense. Additionally, defendant claimed he was denied the effective assistance of counsel because neither attorney challenged the victim's improper in-court identification and Sergeant L. Hernandez's unclear in-court identification.

The trial court issued a written opinion and order holding defendant was not denied the effective assistance of counsel because defendant failed to inform the trial court that he was dissatisfied with Woodside prior to his conviction. The trial court noted that defendant failed to cite any authority or support for his argument that the trial court was required to ask him what the arrangements were between him and the attorneys who appeared on his behalf. Accordingly, since defendant did not bring to the trial court's attention his alleged dissatisfaction with Woodside leading his representation, the trial court concluded it did not deny defendant the right to be represented by the attorney of his choice, and thus, defendant had no basis for relief under that

argument. The trial court also concluded that the defense attorneys' failure to object to the in-court identifications at issue did not amount to ineffective assistance of counsel because there was an overwhelming amount of admissible evidence linking defendant to the scene of the crime, and it was clear that those present at trial knew Sergeant L. Hernandez was referring to defendant when he identified the man holding the paper as the driver of the Charger. The trial court noted that, after the parties had an opportunity to review the video recording of the trial, they agreed that defendant was the only one holding a piece of paper at the defense table when Sergeant L. Hernandez identified the driver of the Charger. Accordingly, the trial court denied defendant's motion for a new trial or *Ginther* hearing.

## II. IN-COURT IDENTIFICATIONS

On appeal, defendant argues his due-process rights were violated because the identification testimony from the victim was tainted by an unduly suggestive pretrial identification procedure. Further, the in-court identification of the driver with the bullet wound to his abdomen by Sergeant L. Hernandez was unclear on the record. We conclude that defendant's due-process rights were not violated by either identification testimony because the victim's identification testimony was not prejudicial and Sergeant L. Hernandez's identification testimony was clear to those present and not prejudicial.

The procedure employed to obtain identification evidence from a witness implicates a defendant's due-process rights. *People v Posey*, 512 Mich 317, 331; ___ NW2d ___ (2023). Trial counsel must object to an in-court identification to preserve the issue for appeal. *Id*. at 331-332. Since neither defense attorney objected to the victim's or Sergeant L. Hernandez's identification testimony, neither part of this issue is preserved. "Unpreserved constitutional questions are reviewed for plain error affecting defendant's substantial rights." *Id*. at 332 (citation omitted). To show plain error, a defendant must prove "(1) an error occurred; (2) the error was plain, i.e., clear or obvious; and (3) the plain error affected his substantial rights, meaning it affected the outcome of the proceedings." *People v Jarrell*, 344 Mich App 464, 482; ___ NW2d ___ (2022). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Bennett*, 290 Mich App 465, 475-476; 802 NW2d 627 (2010) (quotation marks and citation omitted).

"A defendant's due-process rights protect against the admissibility of in-court identification evidence that was preceded by a pretrial identification procedure that was so unnecessarily suggestive as to be conducive to mistaken identity." *Posey*, 512 Mich at 332 (quotation marks and citation omitted); see also *People v Woolfolk*, 304 Mich App 450, 457; 848 NW2d 169 (2014), aff'd 497 Mich 23 (2014) ("A photographic identification procedure violates a defendant's right to due process when it is so impermissibly suggestive that it creates a substantial likelihood of misidentification."). "Exclusion of evidence of an identification is required when (1) the identification procedure was suggestive, (2) the suggestive nature of the procedure was unnecessary, and (3) the identification was unreliable." *People v Sammons*, 505 Mich 31, 41; 949 NW2d 36 (2020) (citation omitted).

That the pretrial identification procedure in this case was suggestive is clear. The day after the shooting, the police showed the victim single pictures of defendant and Sanders and asked him

if he recognized either man. "Showing a witness a single photograph is considered to be one of the most suggestive photographic identification procedures." *Woolfolk*, 304 Mich App at 457. Here, the victim was only shown one picture per suspect, making this pretrial identification procedure suggestive. Second, there is nothing in the record indicating this suggestive pretrial identification procedure was necessary. Because Sanders was already dead, defendant was in custody in the hospital, and the victim was healthy enough to be present at the police station, it appears the police could have provided additional photographs to show the victim for identification purposes to avoid the highly suggestive single photograph identification procedure. See *Sammons*, 505 Mich at 48 (holding the absence of facts in the record demonstrating the necessity of a suggestive pretrial identification procedure was sufficient to conclude the procedure was not necessary).

The third factor is whether the identification stemming from the unduly suggestive pretrial identification procedure was unreliable. *Id*. at 41. "[I]dentification evidence stemming from a pretrial identification process that is unnecessarily suggestive may still be admissible if there is an independent basis for establishing the reliability of the identification." *Posey*, 512 Mich at 332 (citation omitted). There are eight factors that determine whether an independent basis for identification exists:

1. Prior relationship with or knowledge of the defendant.

2. The opportunity to observe the offense. This includes such factors as length of time of the observation, lighting, noise[,] or other factors affecting sensory perception and proximity to the alleged criminal act.

3. Length of time between the offense and the disputed identification.

4. Accuracy or discrepancies in the pre-lineup or show-up description and defendant's actual description.

5. Any previous proper identification or failure to identify the defendant.

6. Any identification prior to lineup or showup of another person as defendant.

7. . . . [T]he nature of the alleged offense and the physical and psychological state of the victim. In critical situations perception will become distorted and any strong emotion (as opposed to mildly emotional experiences) will affect not only what and how much we perceive, but also will affect our memory of what occurred.

   Factors such as fatigue, nervous exhaustion, alcohol and drugs, and age and intelligence of the witness are obviously relevant.

8. Any idiosyncratic or special features of defendant. [*Id*. at 332-333 (quotation marks and citations omitted).]

There was not a strong independent basis for the victim's identification of defendant as the shooter because the victim did not know defendant prior to the incident, could not see defendant's entire face during the shooting, and was in a state of panic during the traumatic event. However,

that the victim identified defendant within 24 hours of the shooting and never identified anyone else increases the reliability of the victim's identification. Additionally, the lights in the garage were on when the two men approached the victim, giving the victim a chance to partially observe the men's appearances prior to the shooting, and the victim testified that he recognized defendant as the man with the glasses from the shooting. The relevant question is whether the "indicia of reliability in this case are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances." *Sammons*, 505 Mich at 55 (quotation marks and citation omitted). We conclude that the indicia of reliability did not provide a sufficiently strong independent basis to outweigh the suggestive pretrial identification procedure because "[s]howing a witness a single photograph is considered to be one of the most suggestive photographic identification procedures." *Woolfolk*, 304 Mich App at 457.

In summary, the police erred by showing the victim single photographs of the two suspects. This error was clear and obvious in light of the absence of any circumstances necessitating the use of that highly suggestive pretrial identification procedure. However, this error did not affect the outcome of the proceedings because, even apart from defendant's own testimony—which he suggests he would not have given absent the improper identification testimony—and the challenged identification testimony from the victim and Officer L. Hernandez, there was an insurmountable amount of evidence linking defendant to the shooting.

A neighbor saw a black Charger leaving the area after the shooting. In a nearby location, Sergeant P. Hernandez stopped a dark Charger that defendant was driving. Defendant exited the vehicle and revealed that he had gunshot wounds in his abdomen, which is significant because the victim returned gunfire against both of his assailants. Sergeant P. Hernandez found a gun underneath the driver seat that was later identified as the gun that produced five spent shell casings from the victim's driveway. Officer Deeulis clearly identified defendant as the driver of the Charger. Further, Sanders's wallet and cell phone were located in the Charger, indicating defendant and Sanders traveled together to the victim's house that night. This was important because Sanders's body was found at the scene with a gun next to him that did not belong to the victim. Additionally, the paper that had the victim's address on it originated from Detroit Chassis, where both defendant and Sanders worked. There was also a text chain between Sanders and someone programmed into Sanders's phone as "Omar" that indicated the two men had a planned event that evening. Most significantly, there were multiple spots of defendant's blood on the victim's driveway, indicating that is where defendant was shot. In summary, the foregoing evidence was more than sufficient for a rational trier of fact to find proof beyond a reasonable doubt that defendant was the second assailant. Therefore, the admission of the victim's identification testimony did not affect defendant's substantial rights.

Defendant also argues that Sergeant L. Hernandez's identification of the driver was unclear. While it is true that no one clarified on the record that Sergeant L. Hernandez identified defendant, the record indicates that everyone present understood who Sergeant L. Hernandez identified because neither the attorneys nor the trial judge made any indication that they were confused by the testimony. Furthermore, the trial court noted in its order that, after defendant filed his motion for a new trial or *Ginther* hearing, both parties had the opportunity to review the video of the trial and agreed that it was defendant who was holding the paper when Sergeant L. Hernandez identified the driver as the man sitting at the defense table holding the paper. Defendant failed to present any evidence that contradicted the trial court's summary of the video and the

parties' agreement. Therefore, even if there was an error, defendant failed to prove it was plain. However, even if Sergeant L. Hernandez identified someone other than defendant as the driver of the Charger, that identification was insufficient to outweigh the aforementioned evidence linking defendant to the shooting, including Officer Deeulis's testimony that defendant was the driver of the Charger. Consequently, defendant failed to show that an error with Sergeant L. Hernandez's identification of the driver resulted in the "conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Bennett*, 290 Mich App at 475-476 (quotation marks and citation omitted).

### III. CHOICE OF COUNSEL AND INEFFECTIVE ASSISTANCE

Additionally, defendant argues the trial court erred by denying his motion for a new trial or *Ginther* hearing for the following two reasons. First, defendant was denied the right to choose his own counsel because Woodside was his lead attorney while Mitchell watched Woodside run the trial. Second, defendant was denied the effective assistance of counsel because Woodside failed to properly cross-examine witnesses, did not present the victim's neighbors as witnesses, failed to object to the victim's tainted identification testimony, and failed to clarify Sergeant L. Hernandez's identification testimony. We conclude the trial court did not abuse its discretion by denying defendant's motion for a new trial or a *Ginther* hearing because defendant's request for alternative representation was untimely and Woodside's assistance was effective.

"A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021) (quotation marks and citation omitted). "All findings of fact are reviewed for clear error, while the legal questions are reviewed de novo." *Id*. (quotation marks and citation omitted). "When the reviewing court is left with a definite and firm conviction that the trial court made a mistake, there is clear error." *Id*. (quotation marks and citation omitted).

Defendants have a right to the choice of counsel. *People v Bailey*, 330 Mich App 41, 56; 944 NW2d 370 (2019). However, this Court has previously explained that "a defendant should raise objections at a time when the trial court can correct them and that a defendant is not permitted to harbor error as an appellate parachute." *People v Zitka*, 335 Mich App 324, 346-347; 966 NW2d 786 (2020) (quotation marks and citation omitted). Defendant did not inform the trial court that he was dissatisfied with Woodside's representation until the trial was over, thereby failing to give the trial court an opportunity to timely address this issue. In *People v Strickland*, 293 Mich App 393, 399; 810 NW2d 660 (2011), this Court held that the trial court did not abuse its discretion by denying the defendant's request for a new attorney that he made on the first day of trial because the request was untimely. Here, defendant did not inform the trial court that he was dissatisfied with Woodside and wanted Mitchell to lead his representation until after he was convicted. Thus, because defendant untimely raised this issue, the trial court did not abuse its discretion by denying defendant's motion on this basis. Moreover, nothing in the record indicates defendant told his attorneys that he wanted Mitchell to take the lead in his representation, suggesting defendant was not dissatisfied with Woodside's performance during trial, but rather, only with his convictions after trial.

The record indicates the trial court did not abuse its discretion by denying defendant's motion for a new trial or *Ginther* hearing because Woodside's assistance was effective, and thus,

defendant was not denied the effective assistance of counsel. Defendant alleges that Woodside's performance was deficient because she failed to properly cross-examine witnesses, call the victim's neighbors to testify, object to the victim's identification testimony, or clarify Sergeant L. Hernandez's identification testimony. We disagree.

A criminal defendant has the right to a fair trial which includes the right to effective assistance of counsel. *Isrow*, 339 Mich App at 531. "Trial counsel is ineffective when counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. (quotation marks and citation omitted). "Trial counsel's performance is presumed to be effective, and defendant has the heavy burden of proving otherwise." *Id*. "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "If counsel's strategy is reasonable, then his or her performance was not deficient." *Isrow*, 339 Mich App at 532 (quotation marks and citation omitted). When evaluating an ineffective assistance of counsel claim, there is a "strong presumption that trial counsel's decision-making is the result of sound trial strategy." *Id*. "A deficiency prejudices a defendant when there is a reasonable probability that but for trial counsel's errors, the verdict would have been different." *Id*.

The record does not indicate, nor has defendant demonstrated, that Woodside performed inadequate cross-examinations. See *People v Smart*, 304 Mich App 244, 251; 850 NW2d 579 (2014) (holding a defendant-appellant may not "merely announce a position and leave it to this Court to rationalize the basis for the claim, or elaborate the argument."); see also *People v Solloway*, 316 Mich App 174, 189; 891 NW2d 255 (2016) (holding defendants have the burden of establishing the factual predicate underlying a claim of ineffective assistance of counsel). Defendant does not identify any specific instances where a witness was not cross-examined or not cross-examined effectively. In contrast to defendant's allegation, the transcripts indicate that Woodside performed robust cross-examinations throughout trial. Consequently, Woodside's performance during cross-examinations was not deficient.

Next, defendant claims that Woodside's performance was deficient because she did not call the victim's neighbors to testify. "[T]he failure to call a particular witness at trial is presumed to be a matter of trial strategy, and an appellate court does not substitute its judgment for that of counsel in matters of trial strategy." *People v Seals*, 285 Mich App 1, 21; 776 NW2d 314 (2009). Defendant failed to demonstrate that the victim's neighbors had valuable testimony to offer, thereby failing to cast doubt on the presumption that Woodside's decision not to call those witnesses was the result of sound trial strategy. See *Isrow*, 339 Mich App at 532 (holding that, when evaluating an ineffective assistance of counsel claim, there is a "strong presumption that trial counsel's decision-making is the result of sound trial strategy."). In his affidavit, defendant vaguely mentioned that "neighbors" heard loud talking prior to the shooting, but did not offer any names or describe how this testimony would have helped his defense. See *People v Haynes*, 338 Mich App 392, 430; 980 NW2d 66 (2021) (holding the defendant has the burden of proof to establish that the testimony defense counsel allegedly failed to elicit would have benefited the defendant). Without any support for defendant's claim that Woodside's failure to call these witnesses was unreasonable, we cannot form a definite and firm conviction that the trial court erred by denying defendant's motion on this basis. See *Solloway*, 316 Mich App at 189 (holding

defendants have the burden of establishing the factual predicate underlying a claim of ineffective assistance of counsel).

Defendant also claims Woodside's performance was deficient because she failed to object to the victim's identification testimony. Since the victim's identification was tainted by an unnecessarily suggestive pretrial identification procedure, and the victim did not have an independent basis for his identification that demonstrated its reliability, we conclude Woodside's performance was deficient when she failed to object to the victim's identification testimony. See *Trakhtenberg*, 493 Mich at 51 (providing that an attorney's performance is deficient when it falls below an objective standard of reasonableness). Specifically, Woodside's failure to object to the victim's identification testimony was unreasonable because the victim's testimony was tainted by one of the most suggestive photographic identification procedures. See *Woolfolk*, 304 Mich App at 457 ("Showing a witness a single photograph is considered to be one of the most suggestive photographic identification procedures."). However, Woodside's failure to object to the victim's identification testimony did not prejudice defendant because, as discussed earlier, there was an insurmountable amount of independent evidence placing defendant at the scene of the shooting that night. Therefore, just as the admission of this evidence did not prejudice defendant, Woodside's failure to object also did not prejudice defendant because there is not a reasonable probability that the result would have been different had Woodside objected to the testimony.

Finally, defendant argues that Woodside's failure to clarify Sergeant L. Hernandez's identification testimony constituted deficient performance. We disagree. As discussed earlier, it is likely that Sergeant L. Hernandez's identification of the driver was clear to those present at trial, therefore negating the need for Woodside to clarify Sergeant L. Hernandez's testimony. See *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015) ("[C]ounsel is not ineffective for failing to raise meritless or futile objections."). However, even if it was not clear, defendant was not prejudiced by Woodside's failure to clarify Sergeant L. Hernandez's identification testimony because other evidence demonstrated defendant was the driver and was one of the assailants during the shooting. Therefore, even if Woodside's performance was deficient when she failed to clarify Sergeant L. Hernandez's identification testimony, defendant was not prejudiced thereby because there is not a reasonable probability that the result would have been different had Woodside clarified the testimony.

In conclusion, since Woodside's performance was never both deficient and prejudicial, the trial court did not abuse its discretion by denying defendant's motion for a new trial or a *Ginther* hearing on the basis that he was denied the effective assistance of counsel.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kathleen Jansen
/s/ Allie Greenleaf Maldonado